ESTATE OF JUDSON C. WELLIVER, DECEASED, BY JANE H. WELLIVER, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8979. Promulgated January 28, 1947.

166

William F. Leopold, Jr., Esq., for the petitioner.
Robert H. Kinderman, Esq., for the respondent.

**168**

OPINION.

JOHNSON, *Judge*: The estate of Judson C. Welliver comprised a policy of insurance issued to the decedent by the Equitable Life Assurance Society pursuant to a policy for group life insurance taken out by decedent's employer, the Sun Oil Co., on the lives of its employees. Under the terms of the policy $20,000 was payable and was paid after decedent's death to his widow, whom he had designated as beneficiary. He had the right at all times to change the beneficiary. While the policy was in force, the Sun Oil Co. paid all premiums for insurance under it in the amount of $1,000, and paid 24/84 of all premiums on the remaining $19,000; petitioner paid 60/84 of the premiums on the $19,000. On the basis of premium payments the executrix included on the estate tax return $13,571.43 as the value of the

policy. That figure represents 60/84 of $19,000. The Commissioner determined that the entire $20,000 was includible in the value of the gross estate.

The decedent died on April 14, 1943, after enactment of the Revenue Act of 1942, which became effective on October 21, 1942. By section 404 (a) of that act the Internal Revenue Code was amended to require the inclusion of life insurance proceeds in the value of the gross estate.

SEC. 811. GROSS ESTATE.

\* \* \* \* \* \* \*

(g) PROCEEDS OF LIFE INSURANCE.—

\* \* \* \* \* \* \*

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. \* \* \* For the purposes of clause (B) of this paragraph, the term "incident of ownership" does not include a reversionary interest.

It is well settled that the insured's right to change the beneficiary is an incident of ownership, and more specifically is one which warrants the inclusion of insurance proceeds in the value of a decedent's gross estate, *Chase National Bank* v. *United States*, 278 U. S. 327. Such right indeed was among those singled out as an example of the term's meaning in the Senate Finance Committee's comment on changes in the section made by the Revenue Act of 1942. Senate Finance Committee Rept. No. 1631, p. 235, 77th Cong., 2d sess. The judicial interpretation of "incident of ownership," in fact, was so broad in scope that Congress legislatively excluded from it a mere reversionary interest.

Petitioner admits that decedent's right falls within the term "incident of ownership," but contends that subsection (B) is to be limited by subsection (A), which requires inclusion in gross estate of only that part of a life insurance policy's proceeds proportionate to the decedent's contribution of premiums to the total amount of premiums paid. Otherwise, it is argued, an application of subsection (B) is unreasonable and confiscatory, for, prior to the enactment of section 404 as an amendment to section 811 (g) of the Internal Revenue Code, it was settled that the proceeds of an insurance policy payable to a beneficiary other than the estate of the insured were includible in gross estate only in the proportion that premiums paid by the insured bore to total premiums paid. *Lang* v. *Commissioner*, 304 U. S. 264; *Helvering* v. *Reybine* (C. C. A., 2d Cir.), 83 Fed. (2d) 215; *Old Colony Trust Co., Executor*, 39 B. T. A. 871. In this connection the Supreme Court said in *Lang* v. *Commissioner, supra:*

\* \* \* In the absence of a clear declaration it cannot be assumed that Congress intended insurance bought and paid for with the funds of another than the insured and not payable to the latter's estate, should be reckoned as part of such estate for purposes of taxation. See *Igleheart* v. *Com'r.*, 5 Cir., 77 F. 2d 704, 711.

Section 404 of the Revenue Act of 1942, however, supplied that "clear declaration," for subsections (A) and (B) are disjunctive and there is no ground for the inference that one is subordinate to or limited by the other. On the contrary, the Senate Finance Committee stated explicitly in Report No. 1631, *supra*, p. 235, referring to the provisions of subsections (A) and (B) : "If either of these criteria are satisfied the proceeds are includible in the gross estate." As the criterion set forth in (B) is satisfied, we approve the Commissioner's determination.

We are furthermore of the opinion that the criterion of (A) is satisfied. While decedent paid directly only 64/84 of the premiums on $19,000 of the insurance, his employer paid all of the remainder, and under circumstances which characterize such payments as additional compensation. All employees, and only employees, were eligible for the benefits of the group insurance contract, and were, moreover, precluded from applying for or increasing the amount of insurance taken under it unless at the time of application they were working full time and for full pay. The character of the premium payments made by the employer under such contracts was considered in *First National Bank & Trust Co. of Minneapolis*, 39 B. T. A. 134, and cases therein cited, and deemed compensatory, particularly if, as here, the employer's contract did not result in a group policy, but in the employee's individual policy. We are of opinion that all premiums on the policy here in issue were paid "directly or indirectly by the decedent," and that such a view is supported by the statement of the Senate Finance Committee, Rept. No. 1631, *supra*, page 235 :

Payments of premiums or other consideration by the decedent include payments made by him directly or indirectly. \* \* \* Payment is also made by the decedent if the decedent's employer makes payment as compensation for services. These examples merely illustrate the concrete application of the provision.

In *Bessie M. Ballinger, Executrix*, 23 B. T. A. 1312, and cases following it cited by petitioner, the proceeds of group life insurance were excluded from a deceased employee's gross estate to the proportionate extent that the employee had not paid the premiums, but those decisions stressed the ground that the decedent employee had not taken out the policy upon his own life, as contemplated by section 811 (g), Internal Revenue Code, prior to 1942. That defense is not here available, as decedent himself took out an individual policy pursuant to a group insurance contract. It is also to be noted that section 404 (a) of the Revenue Act of 1942 amended section 811 (g) of the

Internal Revenue Code by changing the phrase "insurance under policies taken out by the decedent upon his own life" to "insurance under policies upon the life of the decedent."

Respondent argues, further, that the entire insurance proceeds are includible in gross estate because the decedent exercised in respect of them a power of appointment to take effect in possession or enjoyment at or after death within the meaning of section 811 (f), Internal Revenue Code. As we sustain the determination under the provisions of section 811 (g), we deem it unnecessary to discuss the merits of this contention.

2. Among the assets of decedent's estate were 19 contracts providing for the payment of $100 annually to decedent during his life and, after his death, to his wife for life. The wife, as executrix, elected to value the estate as of a date one year after decedent's death, or April 14, 1944, pursuant to the provisions of section 811 (j), and on the estate tax return she reported the 19 contracts at $20,886.20 "value under option" and $21,557 "value at date of death." She contends that the "value under option," i.e., the value on April 14, 1944, should be reflected in gross estate, although section 811 (j) provides that even if the optional valuation is chosen:

\* \* \* (2) any interest or estate which is affected by mere lapse of time shall be included at its value as of the time of death (instead of the later date) with adjustment for any difference in its value as of the later date not due to mere lapse of time. \* \* \*

An annuity contract by its nature is affected by the lapse of time, since time measures the benefits derived therefrom and its lapse shortens the contract's duration, here measured by the beneficiary's life. Its cost or market value, moreover, varies with the beneficiary's life expectancy, which in turn is affected by the lapse of time, and as actual payments made during the year between death and optional valuation are not to be reflected in gross estate, *Maass* v. *Higgins*, 312 U. S. 443, it necessarily follows that the interest or estate represented by the 19 contracts on April 14, 1943, is not the same as represented by the 19 contracts on April 14, 1944. Petitioner, taking note of the quoted subsection and of section 81.11 (c), Regulations 105, which directs that obligations for payments of money be valued as of the date of death, asserts that the rule is not reasonable in that "it does not cover all contingencies." The possibility of the annuitant's death before the lapse of a year is suggested as an event which would render the contracts valueless on the optional date. We are not impressed with this argument, for by such event the interest or estate would not have been affected merely by the lapse of time, and express provision is made for adjustment on the later date because of a contingency other than the lapse of time. We accordingly hold that the

value of the 19 contracts at the date of death should be included in gross estate.

The $21,557 "value at date of death" reported on the estate tax return and now defended by petitioner as correct, represents the total single premiums which would have been required to purchase similar contracts for the life of the beneficiary on April 14, 1943, if the issuing insurance companies used the same annuity table and interest rate for premium computation that they had used in computing premiums on the policies when actually issued. The amounts, of course, would be less because the beneficiary's life expectancy was less. But in fact the insurance companies in 1943 were not using the same table and interest rate in computing the premiums on similar annuity contracts for customers purchasing such contracts in that year. Computed by the table and interest rate then adopted for actual transactions, the amount necessary to purchase 19 comparable contracts of annuity for the life of Jane H. Welliver would have been $26,706. The Commissioner determined that this figure should be included in the value of gross estate as representing the value of the 19 contracts at date of death, and we agree.

Petitioner contends that the contracts' value in 1943 should be computed at the old rates by virtue of the provision of section 81.10 (i) (2), Regulations 105, which provides:

(2) The value of an annuity contract issued by a company regularly engaged in the selling of contracts of that character is established through the sale by that company of comparable contracts.

Petitioner argues that, even although contracts made in 1943 contain the same conditions as to payments and benefits for the beneficiary, still they are not to be deemed "comparable contracts" because of the difference in the beneficiary's life expectancy and in the factors used in premium computation. We find no merit in this argument. Petitioner is not being penalized, as suggested in its brief, "because of a change in economic conditions." The value of the rights acquired under the contracts rose on the market between the times of their making and the date of decedent's death. And if the value of what remained of them was greater in 1943 than the value of such remainder computed by the method used in computing original cost, this increase does not differ in essence from the rise in land or securities which may be included in gross estate at a value greater than cost. The Commissioner's determination is approved. *Mearkle's Estate* v. *Commissioner* (C. C. A., 3d Cir.), 129 Fed. (2d) 386; *United States Trust Co. of New York* v. *Higgins* (S. Dist. N. Y.), 56 Fed. Supp. 997. Cf. *United States* v. *Ryerson*, 312 U. S. 260.

Reviewed by the Court.

*Decision will be entered for the respondent.*