ESTATE OF ISIDORE WALDMAN, DECEASED, PHILIP STEINMAN, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24602.  Promulgated November 9, 1950.

*Philip Steinman, Esq.*, for the petitioner.
*Nicholas Tomasula, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge:* The respondent determined a deficiency in income tax of Isidore Waldman, deceased, for the period January 1, 1945, to November 22, 1945, in the amount of $9,218.42.

The issue is whether the decedent's distributive share of the income of the partnership known both as Larolaine Dress Co. and Larolaine Juniors Co. for the period July 1, 1945, to November 22, 1945, should be included in decedent's income for the period January 1 to November 22, 1945 (date of his death). The case was submitted upon a stipulation of facts with exhibits attached. The facts stipulated are so found.

Isidore Waldman, a resident of New York City, died testate on November 22, 1945. Philip Steinman (hereinafter sometimes called petitioner) is the duly appointed, qualified, and acting executor and trustee of his estate. The income tax return of the decedent for the period January 1, 1945, to November 22, 1945, was filed by the executor on March 15, 1946, with the collector of internal revenue for the third district of New York, upper New York division. The petitioner concedes that, as shown by the Government's audit of the partnership return for the year ending June 30, 1945, the decedent's distributive share of the partnership income should be increased by $1,850. Up until the time of his death on November 22, 1945, Isidore Waldman had always filed his income tax returns on the basis of a calendar year. The firm known as Larolaine Dress Co., and also known as Larolaine Juniors Co., in which he was a partner at the time of his death, made its returns on the basis of a fiscal year ending June 30th. The partnership consisted of Waldman, Jack Schoenfield, and Sidney Portnow. The partnership agreement was executed by and between these three men on July 19, 1944, and set forth Waldman's interest at 50 per cent. Schoenfield's as 30 per cent, and Portnow's as 20 per cent.

The agreement also contained, among others, the following provisions:

9. DISSOLUTION. If any party to this agreement shall at any time desire to dissolve such partnership, he shall give notice in writing to the other parties hereto of his intention, stating in said notice the sum of money which he is willing to give for the other parties' undivided interest in said business, and the sum of money which he is willing to accept for his undivided interest in said business if the other parties so elect. The parties receiving such notice, shall within thirty days from the date hereof, either sell their interest or purchase the interest of the other party at the sum specified in said notice, and shall notify the party giving such notice of their election to buy such party's interest or to sell their own, according to aforesaid option. In case of the failure of the parties to whom said notice is given to make their election in writing in thirty

days after the service of such notice, then the party giving such notice may elect whether he will sell his interest or purchase that of the partners upon the terms contained in said notice or option given by him. When a determination has been made as above provided the party or parties selling shall convey their interest to the partner or partners purchasing upon the payment of said purchase price, and shall thereupon retire from the copartnership.

    \*       \*      \*      \*      \*      \*      \*

12. DEATH OF PARTNER: If any partner dies during the existence of the partnership, his executors or administrators or the person or persons to whom he bequeathed his interest in the partnership shall have the right to continue as partner or partners in the business in the place and stead of the deceased partner or they may sell their interest in the partnership as herein provided. The election of the representatives to continue in the partnership shall be made by giving notice in writing of such election to the surviving partners at the office of the partnership within two months after the death of the deceased partner. Thereupon the said personal representative shall succeed to all the rights of the deceased partner to share in the profits or surplus of the business, but shall take no part in the management of the affairs of the partnership, and shall receive no salary.

    \*       \*      \*      \*      \*      \*      \*

16. This agreement shall terminate one year from the date hereof, and after paying all liabilities the remaining assets shall be divided in the same proportions as the capital contributions of the parties hereto. If the parties hereto shall not desire to dissolve the partnership at the end of one year, this agreement shall continue in its entirety including this clause for another year. In the event of a dissolution pursuant to the terms of this agreement, and one or more of the parties desire to continue the business and pay the outgoing partner or partners his or their share of the partnership assets, an additional sum shall be paid for the privilege of continuing the business. Which of the parties shall continue the business shall be determined as follows: Each of the parties shall submit sealed bids and the right to continue the business shall go to the highest bidder. There shall be only one bid, and in the event that any bids shall be equal, then the bidding shall be open between the parties who made similar bids. The amount so arrived at shall be divided among the parties in proportion to their capital contribution.

From the death of Isidore Waldman on November 22, 1945, until at least January 31, 1946, the surviving partners continued to carry on the business without interruption. A few days following Waldman's death, Schoenfield, Portnow, and Philip Steinman, Executor for Waldman, instructed the Manufacturer's Trust Co., in which the partnership bank account was kept, to pay only checks signed by Steinman and either Schoenfield or Portnow. This continued through January 31, 1946.

On January 2, 1946, the executor, Philip Steinman, wrote the following letter to the surviving partners pursuant to paragraph 12 of the partnership agreement:

Please be advised that on December 28th, 1945, Letters Testamentary and Letters of Trusteeship were issued to me by the Surrogate of Kings County as Executor and Trustee of the Estate of Isidore Waldman.

Pursuant to the powers vested in me under the Last Will and Testament of Isidore Waldman, deceased, and pursuant to paragraph "Twelfth" of the partnership agreement between yourselves and the late Isidore Waldman, dated July 19th, 1944, I hereby elect as Executor and Trustee to continue as a partner in the business formerly conducted between yourselves and Isidore Waldman.

On January 7, 1946, the attorney for the surviving partners answered the letter above-mentioned as follows:

I am the attorney for Messrs. Jack Schoenfield and Sidney Portnow, surviving partners of Larolaine Dress Company and on their behalf am writing you in reply to your letter dated January 2, 1946, in which you gave notice of an election on your part "as Executor and Trustee to continue as a partner in the business formerly conducted between yourselves and Isidore Waldman." You state that the election is made pursuant to the provisions of paragraph 12 of an agreement made among the parties dated July 19, 1944.

Reference to this paragraph of such agreement indicates that a right of election is granted to the "executors or administrators or the person or persons to whom he (the deceased partner) bequeathed his interest in the partnership * * *".

I have examined a copy of the decedent's Last Will and Testament dated September 21, 1945, and find that no power is granted to the "executors or administrators" to continue any investment or business interest of the decedent, nor is the partnership interest of the decedent bequeathed by him to any "person or persons."

Accordingly, I advise you on behalf of Messrs. Schoenfield and Portnow that we regard your notice as ineffective for any purpose whatsoever and herewith express our rejection of your election to continue the interest of the decedent in the partnership of which he was a member at the time of his death.

On January 10, 1946, the executor entered into an agreement with the surviving partners. This agreement contained, among other things, the following provisions:

WHEREAS, Steinman by letter dated January 2, 1946, notified Schoenfield and Portnow of his election as Executor and Trustee under the Last Will and Testament of the late Isidore Waldman to succeed to and continue all the rights of said deceased partner in said LAROLAINE DRESS COMPANY as more particularly provided in paragraph 12 of said Articles of Copartnership; and

WHEREAS, by letter dated January 7, 1946, Schoenfield and Portnow rejected the aforesaid election and asserted the inapplicability of said paragraph 12 of such Articles of Copartnership by reason of the terms of said Last Will and Testament of the late Isidore Waldman, and the limited powers of the Executor thereunder; and

WHEREAS, the parties hereto desire to adjust their differences,

NOW, THEREFORE, it is mutually agreed as follows:

I. The copartnership shall be dissolved as at January 31, 1946, as though that were the date originally fixed for the expiration of the term of said partnership under the provisions of said Articles of Copartnership dated July 19, 1944.

II. Steinman hereby sells, transfers and assigns to Schoenfield and Portnow in equal shares, the entire partnership interest of the late Isidore Waldman as at January 31, 1946, in and to the business of LAROLAINE DRESS COMPANY, including therein, but not by way of limitation, assets of every kind and nature,

capital investment, surplus, profits, good will, if any, all funds in partnership bank accounts, claims or debts due or to become due the partnership, trademarks, trade names and lease.

III. Schoenfield and Portnow shall pay to Steinman as the full and complete consideration for the entire partnership interest of the late Isidore Waldman in such business as aforesaid, the total sum of Thirty-one Thousand ($31,000) Dollars * * *

        *        *        *        *        *        *        *

2. Steinman shall as "authorized signature", continue to control jointly with Schoenfield and Portnow, all bank accounts of the partnership until payment has been made by them to Steinman of the installment of Twelve Thousand (12,000) Dollars provided to be paid to him on or before January 31, 1946, as aforesaid.

On April 12, 1946, a partnership return, entitled Larolaine Juniors Co., was filed and labelled "Final Return". This shows Waldman's distributive share of the partnership income for the period beginning July 1, 1945, and ending January 31, 1946, to be $15,300.99. His distributive share of the partnership income for the period beginning July 1, 1945, and ending November 22, 1945, is $13,056.33. This latter amount respondent included in Waldman's gross income for the period January 1 to November 22, 1945.

The sole issue in dispute is whether Isidore Waldman's distributive share of partnership earnings for the period immediately preceeding his death is includible in his gross income for his final return.

The pertinent provisions of the Internal Revenue Code are set forth in the margin.[1]

[1] SEC. 181. PARTNERSHIP NOT TAXABLE.
Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity.
SEC. 182. TAX OF PARTNERS.
In computing the net income of each partner, he shall include, whether or not distribution is made to him—

    *        •        *        *        *        *        *

(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183 (b).
SEC. 188. DIFFERENT TAXABLE YEARS OF PARTNER AND PARTNERSHIP.
If the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner.
SEC. 126. INCOME IN RESPECT OF DECEDENTS [Added by § 134, 1942 Act].
(a) INCLUSION IN GROSS INCOME.—
(1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:
(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent:
(B) the person who, by reason of the death of the decedent acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or
(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

Prior to and on the date of his death, November 22, 1945, Isidore Waldman was a member of a partnership known both as Larolaine Dress Co. and Larolaine Juniors Co. Waldman reported on the basis of a calendar year and the firm on the basis of a fiscal year ending June 30. The firm consisted of three partners. The partnership agreement provided that upon the death of a partner, the heirs or estate of the deceased partner could elect within 60 days to continue as a partner in the place of the deceased partner or to sell his interest as provided therein. The petitioner, as executor for Waldman, on January 2, 1946, attempted to exercise the right of election to continue as a partner. This election was rejected by the surviving partners. These partners then reached an agreement with the petitioner to dissolve and terminate the partnership as of January 31, 1946. The respondent determined Waldman's distributive share of the partnership profits for the period July 1 to November 22, 1945, to be $13,056.33. The respondent included this amount in the decedent's gross income for the period January 1, to November 22, 1945.

This brings us to the specific question of whether the partnership tax year ended for Waldman upon his death, thereby making his distributive share of the partnership earnings for the period July 1, to November 22, 1945, includible in his final return for the period January 1, to November 22, 1945.

The respondent contends that the partnership was dissolved upon the death of Waldman and, as far as Waldman is concerned, the partnership tax year was ended as of that date.

The partnership in the instant case was created and engaged in business in New York. In that jurisdiction *dissolution* of a partnership takes place when a partner dies.[2] Upon dissolution, however, the partnership is not *terminated*, but continues until partnership affairs are finally wound up.[3] Sections 72 (3) and 73 of the N. Y. Partnership Law specifically relate to businesses continued after the death of a partner.[4]

---

[2] N. Y. Partnership Law.
62. Causes of dissolution.
Dissolution is caused :
    *        *        *        *        *        *        *
4. By the death of any partner ;
    *        *        *        *        *        *        *

[3] Id.
61. Partnership not terminated by dissolution.
On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed.

[4] Id.
72. Liability of persons continuing the business in certain cases
    *        *        *        *        *        *        *
3. When any partner retires or dies and the business of the dissolved partnership is continued as set forth in subdivisions one and two of this section, with the consent of the

In *Heiner* v. *Mellon*, 304 U. S. 271, the firm involved was subject to the provisions of the partnership law of Pennsylvania.[5] The Supreme Court specifically distinguished between dissolution and termination of a partnership. The Court held that the taxable year of a partnership, as far as the surviving partners are concerned, is not affected by the death of a partner when the partnership continues until the winding up of affairs is completed. Further, the partnership tax year does not end for the deceased partner on the day he dies where the partnership agreement provides that the firm itself and the interest of a deceased partner shall continue after his death. The undistributed profits of the partnership paid to an executor at the end of a normal accounting period are taxable as income to the deceased partner's estate. *Girard Trust Co.* v. *United States*, 182 Fed. (2d) 921 (CA-3, 1950), reversing 86 Fed. Supp. 816; *Estate of Henderson* v. *Commissioner*, 155 Fed. (2d) 310 (CCA-5, 1946), reversing 4 T. C. 1001; *Estate of Mnookin* v. *Commissioner* (CA-8, August 23, 1950), affirming 12 T. C. 744.

In *Girard Trust Co.* v. *United States*, *supra*, recently decided by the Court of Appeals for the Third Circuit, the decedent was at the time of his death a member of a partnership. The Articles of Partnership provided that the firm should continue until dissolved by mutual consent on June 30 of any following year. They also provided that the death or withdrawal of any partner should not prevent the continuance of the business or necessitate it winding up. The interest of any deceased partner in the business should continue subject to all of the risks of the business, and his proportionate share of profit or losses would be determined as of the following June 30. The deceased partner died November 15. The District Court held that the decedent's allocable share of the partnership profits as of the day he died, whether distributed or not, was includible in the final income tax return that was filed for him. The Court of Appeals disagreed. It held that no

retired partners or the representative of the deceased partner, but without any assignment of his right in partnership property, rights of creditors of the dissolved partnership and of the creditors of the person or partnership continuing the business shall be as if such assignment had been made.

\* \* \* \* \* \* \*

73. Rights of retiring estate of deceased partner when the business is continued.

When any partner retires or dies, and the business is continued under any of the conditions set forth in section seventy-two, subdivisions one, two, three, five and six, or section sixty-nine, paragraph (b) of subdivision two, without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option or at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership; provided that the creditors of the dissolved partnership as against their separate creditors, or the representative of the retired or deceased partner, shall have priority on any claim arising under this section, as provided by section seventy-two subdivision eight of this chapter.

[5] Pennsylvania and New York have both adopted the Uniform Partnership Act.

tax year ended for the partnership at deceased partner's death and that no partnership gain or loss for the period immediately preceding death need be reported in the decedent's final return. It concluded, rather, that the deceased partner's allocable share determined and distributed pursuant to the agreement at the end of the fiscal year was income taxable to the decedent's estate.

In arriving at this conclusion, the Court is in agreement with the decisions rendered in *Estate of Henderson* v. *Commissioner, supra*, and *Estate of Mnookin* v. *Commissioner, supra*.

The respondent seeks to distinguish the instant case from the *Girard Trust Co., Henderson*, and *Mnookin* cases. He reasons that in those cases there was strict adherence to the partnership agreement and a normal accounting and distribution took place at the end of the fiscal year. In the instant case, however, he argues that there was no strict adherence to the partnership agreement in that the firm was terminated prior to the end of its fiscal year. He also contends that the petitioner, as decedent's executor, never participated in the partnership earnings or activities and that the firm was effectively terminated by the death of the decedent.

We do not agree. We think that the petitioner did all within his power to carry out the provisions of the agreement. He took as active a part as was possible consistent with the agreement.

The agreement provided a 60-day period during which the personal representative of a deceased partner could make an election to continue as a partner. If such an election were made, he was then to succeed to the rights of the deceased partner. He would share in the "profits or surplus" of the business, but would take no part in the management, nor receive a salary. Pursuant to this agreement, the petitioner, as Waldman's executor, notified the surviving partners of his election to continue as a partner. The surviving partners rejected this election. The grounds for this rejection do not concern us, and we express no opinion as to their validity.

Following the rejection of his election, the petitioner, on January 10, 1946, entered into an agreement with the surviving partners. This agreement provided for the dissolution of the firm as of January 31, 1946. Waldman's interest in the firm was subject to all the risks and liabilities of the business until that date.

Paragraphs 9 and 16 of the partnership agreement provided for dissolution of the firm. There has been no evidence presented to indicate that the transaction of January 10, 1946, was in any way inconsistent with these provisions.

As provided in the agreement, Waldman, prior to his death, had countersigned all checks drawn on the firm's bank account. Shortly after his death, the petitioner was authorized to countersign such

checks in Waldman's place. He continued to do this until the dissolution of the firm on January 31, 1946.

The respondent urges that the doctrine of *Guaranty Trust Co.* v. *Commissioner*, 303 U. S. 493, is controlling here. We do not so interpret that case. See *Girard Trust Co.* v. *United States, supra,* at 924. Since that time Congress has provided the procedure for taxing a decedent's estate where items not includible in the decedent's final income tax return are later received.[6] The threat of escape from taxation that concerned the Court in the *Guaranty Trust Co.* case is clearly not present here.

We hold that the tax year of the partnership did not end with the death of Isidore Waldman; that it continued until termination of the partnership on January 31, 1946, and that no part of the partnership income for the period July 1 to November 22, 1945, should be included in petitioner's return for that period.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[6] Internal Revenue Code, § 126 (a) (1).