ESTATE OF EMIL M. GOLDBLATT, DECEASED, RUTH A. GOLDBLATT, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 23468.   Promulgated January 26, 1951.

*Samuel F. Frank, Esq.*, and *Robert A. Berner, C. P. A.*, for the petitioner.

*Rigmor O. Carlsen, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* In this proceeding the questions for our decision are as follows:

1. Where decedent possessed all the incidents of ownership in both policies to the date of his death, does the fact that decedent's wife paid $3,000 or one-fifth of the premium of Policy No. 1,154,577 reduce the value of this policy for estate tax purposes?

2. Did respondent correctly determine, in his second deficiency notice, for estate tax purposes, the value of Policy No. RA 1,154,577 taken out by decedent with the Massachusetts Mutual Life Insurance Company and of Policy No. 9,681,225 taken out by decedent with The Equitable Life Assurance Society as of the date of decedent's death?

3. If question number 2 is answered in the negative, then what is the proper value of these policies for estate tax purposes?

In determining the value of the gross estate of a decedent, there must be included therein the proceeds of life insurance in accordance with section 811 (g) of the Internal Revenue Code.[2] It is stipulated that the two policies taken out by decedent were single premium payment annuity and life insurance policies and the inclusion of these policies in decedent's gross estate is conceded; however, the value at which they are to be included is in dispute.

First of all, petitioner contends that because decedent's wife paid $3,000 or one-fifth of the premium of Policy No. RA 1,154,577 the value of this policy must be reduced by one-fifth for estate tax purposes because decedent's wife attained a vested interest in one-fifth of this policy from its inception. Petitioner cites *De Lappe* v. *Commissioner*, 113 Fed. (2d) 48, in support of its contention; however, *De Lappe* v. *Commissioner* was a case arising under the community

---

[2] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \*

(g) PROCEEDS OF LIFE INSURANCE.—

\* \* \* \* \* \*

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For the purposes of clause (A) of this paragraph, if the decedent transferred, by assignment or otherwise, a policy of insurance, the amount paid directly or indirectly by the decedent shall be reduced by an amount which bears the same ratio to the amount paid directly or indirectly by the decedent as the consideration in money or money's worth received by the decedent for the transfer bears to the value of the policy at the time of the transfer. For the purposes of clause (B) of this paragraph, the term "incident of ownership" does not include a reversionary interest.

\* \* \* \* \* \*

property laws of Louisiana and no community property law is involved in the instant proceeding.

At the time of decedent's death section 811 (g), Internal Revenue Code, provided that there shall be included in the gross estate of the decedent the value of the proceeds of life insurance receivable by beneficiaries other than the executor:

> * * * To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, *or* (B) *with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person.* * * * [Emphasis added.]

It is stipulated that: "* * * decedent possessed all the incidents of ownership in both policies to the date of his death." In view of this stipulation and the provisions of the Code existent at the date of decedent's death, the entire value of the policy is includible in decedent's gross estate [3] notwithstanding that the law at the date of purchase of the policies was otherwise. *Estate of Frederick Bodell*, 47 B. T. A. 62, affd., 138 Fed. (2d) 553, certiorari denied, 321 U. S. 778; *United States* v. *Jacobs*, 306 U. S. 363; *Gwinn* v. *Commissioner*, 287 U. S. 224. See also first point in *Estate of Judson C. Welliver*, 8 T. C. 165, and *Estate of William E. Edmonds*, 16 T. C. 110.

We, therefore, hold that the full value of both policies purchased by decedent is includible in his gross estate and we have now only to decide whether respondent's determination of value in his second deficiency notice was in error and, if so, then what is the proper value of the policies.

At the time of decedent's death neither company issued policies of the identical type as those taken out by decedent and, therefore, petitioner claims that in accordance with sections 81.10 (i) (2) and (3) [4] the values of the policies includible in decedent's estate are

---

[3] Paul, Federal Estate and Gift Taxation, 1946 Supplement, §§ 10.34, 10.37.

[4] Regulations 105.

SEC. 81.10 Valuation of property.—* * *

* * *

(i) *Annuities, life, remainder, and reversionary interests.*—* * *

* * *

(2) The value of an annuity contract issued by a company regularly engaged in the selling of contracts of that character is established through the sale by that company of comparable contracts.

(3) All other future payments are to be discounted upon the basis of compound interest at the rate of 4 per cent a year. If the time of payment or of payments is dependent upon the continuation of, or upon the termination of a life or of lives, the Actuaries' or Combined Experience Table of Mortality, as extended, and established actuarial principles are to be used in the computation of the present worth. For the purpose of the computation the age of a person is to be taken as the age of that person at his nearest birthday. Table A, a part of this section, gives factors applicable to a case in which only one life is involved. * * *

$13,198.46 for the Massachusetts policy and $27,566.31 for the Equitable policy, these figures being arrived at by multiplying 12 times the monthly payments by 11.88408, the figure shown in Table A, Column 2 set forth in section 81.10 of Regulations 105.

Respondent, in his second deficiency notice, determined the values of the two policies to be $24,876.93 and $51,402.57.[5] It is argued by respondent that petitioner is not entitled to use the table in section 81.10 of Regulations 105 because the policies taken out by decedent were issued by an insurance company and the value of the annuity must be determined in accordance with subsection 81.10 (i) (2) of Regulations 105, and not by subsection 81.10 (i) (3).

It is clear to us that neither the valuation contended for by petitioner nor that determined by the Commissioner in his second deficiency notice is correct. For reasons which we shall presently state, section 81.10 of Regulations 105 urged both by petitioner and respondent is not at all applicable here. Respondent, in arguing that the value of the contracts at decedent's death is the amount for which comparable contracts could have been purchased from the issuing company under the annuity table and interest rate then used by it in computing premiums, strongly relies upon *Estate of Judson C. Welliver, supra,* (second issue in that case). That case is not in point. The contracts involved in that case (second issue) were survivorship annuity contracts with no death benefits provided in the contracts. That fact is shown by the following statement included in our findings of fact in that case wherein we said: "Each contract provided for the payment of $100 annually to Judson C. Welliver during his life and after his death to his wife, Jane H. Welliver, for life." Under these facts we held that section 81.10 (i) (2), Regulations 105 was applicable and that the cost of comparable contracts at the date of decedent's death was the value at which such survivorship annuity contracts should be included in decedent's estate.

In the instant case, the contracts are not survivorship annuity contracts at all; they are single premium retirement annuities on the life of Emil M. Goldblatt, with certain death benefits payable to his widow if he should die prior to receiving any retirement annuities. For example, the Massachusetts Mutual Life Insurance Company contract provides for an annuity of $150 a month to Emil M. Goldblatt to begin on the "2nd day of July 1948." If he should die prior to that date, the following death benefit was payable:

DEATH BENEFIT

Upon receipt of proof of the annuitant's death *before* the due date of the first retirement income payment, the Company will, provided this contract is then in force, pay in one sum to the beneficiary herein, unless otherwise provided, an

---

[5] The statement of respondent's counsel at the trial of this proceeding shows that this is the replacement value determined by respondent.

amount equal to the cash surrender value hereunder on the date of the annuitant's death or an amount equal to the single premium paid for this contract, whichever is the greater. In either case said amount will be increased by any outstanding dividend accumulations hereunder.

Beneficiary: In monthly installments 240 stipulated as provided in Option "C" herein to Ruth A. Goldblatt, the annuitant's wife, if living, as said installments respectively become payable, otherwise to Jacob, Aaron, and Beatrice H. Goldblatt, the annuitant's children, equally and to the survivors or survivor of them if living (in accordance with the optional methods of settlement).

If any beneficiary shall die before the annuitant, the interest of such beneficiary will vest in the annuitant unless otherwise provided.

Emil M. Goldblatt died prior to the date when he would have been entitled to an annuity under the contract and, therefore, the death benefit provided in the contract became payable to his widow, Ruth. The fact that prior to his death decedent, in the exercise of an option provided in the policy, directed that the death benefit payable to his wife should be paid to her in the form of an annuity rather than all in one lump sum did not change in the least the character of such payment from that of insurance into that of a survivorship annuity. A clear demonstration of the correctness of the above statement is that if Emil Goldblatt had lived until July 1, 1948, he would have received an annuity of $150 a month for life. If the contract had been a survivorship annuity as in the *Welliver* case, *supra*, upon Emil's death his wife, Ruth, would have received an annuity of $150 a month for life. She received no such annuity. What she did receive was $93.55 a month for life which, as we have already pointed out, was simply the payment of the death benefit which she was entitled to receive at Emil's death in the form of an annuity for life. The letters from the insurance companies incorporated in the findings of fact above make this perfectly plain.

What is said of the Massachusetts Mutual Life Insurance Company contract can also be said of The Equitable Life Assurance Society contract, except as to amounts. They were essentially the same sort of contracts, each being, as stated in the stipulation of facts, "a single premium payment combination annuity and *life insurance policy*." (Emphasis added.) The fact that the contracts involved here were included by the Commissioner in decedent's gross estate as life insurance and nothing else is shown by the fact that the only section of the statute upon which the respondent relies in his brief is section 811 (g), I. R. C. which relates to the proceeds of life insurance and nothing else. Emil's contract for an annuity never ripened into an actual annuity and the only thing that went over to his wife upon his death was the life insurance part of the policies. Nothing else was payable to any one upon Emil's death, except the life insurance benefit.

In the valuation of life insurance policies, the following is the applicable section of Regulations 105:

Sec. 81.28 *Valuation of insurance.*—The amount to be returned if the policy is payable to or for the benefit of the estate is the amount receivable. If the proceeds of a policy are payable to a beneficiary other than the *estate*, and not to or for the benefit of the estate, the amount to be listed in the appropriate schedule of the return is the full amount receivable. (For taxable portion see section 81.27.) *In case the proceeds of a policy are made payable to the beneficiary in the form of an annuity for life or for a term of years, there should be listed in the appropriate schedule of the return the one sum payable at death under an option which could have been exercised either by the insured or by the beneficiary, or if no option was granted, the sum used by the insurance company in determining the amount of the annuity.* [Emphasis added.]

The part of the regulation underscored above, it seems to us, exactly fits the situation which we have here. The letters of the insurance companies which are in the record show the total amount of death proceeds which would have been payable upon decedent's death to his widow if the option had not been exercised by Emil to direct that the payments should be made to her in the form of annuities, and not in one lump sum payment. In the case of the Massachusetts Mutual Life Insurance Company the total amount of the death proceeds would have been $20,117.58, and in the case of The Equitable Life Assurance Society the amount payable as a death benefit, if taken in a single sum, was $40,440. It was these figures which the Commissioner determined in his original deficiency notice. Why he departed from these figures and adopted others in a deficiency notice mailed 10 days later is not made clear in the latter deficiency notice. Apparently, he used some figures which he determined represented the cost of a comparable single premium payment combination annuity and life insurance policy at the date of decedent's death, relying upon section 81.10 (i) (2) relating to the valuation of annuity policies. How he arrived at his figures of comparable cost, the record does not disclose. But, be that as it may, for the reasons we have already stated, what was includible in decedent's estate was the value of the insurance benefits provided in the policy for that was all that was payable upon decedent's death, and section 81.28, Regulations 105, is the applicable regulation. The valuation figures which the Commissioner used in his original deficiency notice dated April 15, 1949, were, in our view, in exact accord with section 81.28 of Regulations 105 and we see no warrant in law for the increase which he made in his second deficiency notice dated April 25, 1949.

We hold that there should be included in decedent's gross estate $20,117.58 on account of the Massachusetts Mutual Life Insurance Company policy and $40,440 on account of The Equitable Life Assurance Society policy.

*Decision will be entered under Rule 50.*