ESTATE OF FRANK H. KNIPP, DECEASED, HOWARD F. KNIPP, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HOWARD F. KNIPP, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 42545, 50153, 50154.     Filed October 31, 1955.

*Randolph E. Paul, Esq., Julian N. Stern, Esq.,* and *Carolyn E. Agger, Esq.,* for the petitioners.

*Paul Waring, Esq.,* for the respondent.

**OPINION.**

JOHNSON, *Judge:* Frank and Howard, members of the partnership, reported income on the basis of a calendar year. The partnership's taxable year ended on January 31. Involved in the proceedings relating to income tax is the basic question of whether the death of Frank

on November 21, 1947, terminated the partnership and its accounting year for income tax purposes.

Petitioners concede that the death of Frank worked a dissolution of the partnership but, relying primarily on *Heiner* v. *Mellon*, 304 U. S. 271, as to Howard, and distinguishing *Guaranty Trust Co.* v. *Commissioner*, 303 U. S. 493, as to Frank, contend that the firm continued for liquidation purposes without a break in its taxable year until at least January 31, 1948. So arguing, petitioners say that Frank's "salary" [1] of $20,700 and Howard's share of the profits of the business are not taxable until 1948.

Respondent held in his determination of the deficiencies and asserts on brief that the death of Frank terminated the partnership for income tax purposes, with the result that the "salary" of Frank, which the executor of his estate reported as income taxable in 1948, constitutes income taxable for the period January 1, 1947, to November 21, 1947, and that Howard is taxable in 1947 on not only his distributive share of the profits of the partnership to November 21, 1947, but, as sole proprietor, on the earnings of the business for the remainder of the calendar year 1947, contrary to the view of Howard, who included in his return for the calendar year 1948 all of the profits of the partnership for the fiscal year ended January 31, 1948. Respondent says that the *Guaranty Trust Co.* case controls the "salary" question as to Frank, and that that case and paragraph Eleven of the partnership agreement support his position as to Howard.

In *Guaranty Trust Co.*, *supra*, the decedent, who filed his returns on the basis of a calendar year, died on December 16, 1933, while a member of a partnership whose fiscal year ended on July 31. The agreement of copartnership was such that the decedent's death dissolved the partnership, ended his right to share in future profits, and fixed the date for an accounting of earnings by the survivors. Later, the surviving partners formed a new partnership and took over the business as of the time of the decedent's death, with a fiscal year ending July 31, 1934, and from year to year thereafter. In January and February 1934, the decedent's executors received the decedent's share of the profits of the firm for the period from August 1, 1933, to December 16, 1933. The executors omitted the profits, so distributed, in the return filed for the decedent for the taxable period ended with his death, and the Commissioner included it in determining the deficiency. No contention was made by the taxpayer that the short period was not a "taxable year" of the partnership within the meaning of section 182 (a) of the Revenue Act of 1932, and the Court remarked that if such a contention had been made, it could not have prevailed. The issue before the Court was whether the phrase "any

---

[1] The partnership agreement classified the amount as salary. For tax purposes the amount constitutes a share of the profits of the business.

taxable year of the partnership ending within his taxable year"[2] appearing in section 182 (a), *supra*, precluded inclusion in the income of the decedent for the short period ending with his death, his share of the profits of the partnership for that period, and also the full fiscal year ending on July 31. The Court held that it did not.

In *Heiner* v. *Mellon*, *supra*, one of the three equal partners in two partnerships died in 1919. Liquidation of the business continued thereafter to 1925, when the assets were sold in bulk. No new partnership agreements were entered into by the survivors. The partnership returns filed for 1920 listed the estate of the decedent as a member of the partnerships. The accounting period of the partnerships and the partners was the calendar year. The question was whether the surviving partners were taxable in 1920 on their distributive shares of the partnerships for that year. The Court said that dissolution of the partnerships by the death of one of the partners did not affect the liability of the survivors for tax on their distributive shares of the profits in the following year. It then pointed out that:

Although dissolved, the partnerships and the business continued, since, as stated in the Pennsylvania Uniform Partnership Act: "On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." * * *

The Commissioner recognizes that the death of a partner does not "in itself" terminate a partnership for income tax purposes; that "Ordinarily, a partnership will be treated as continuing where the business of the partnership, or a substantial portion thereof, is continued," and that the returns of the continuing partnership should be filed on the basis previously established. Rev. Rul. 144, 1953–2 C. B. 212, 213. He does not require application of the ruling to changes occurring prior to January 1, 1954. Rev. Rul. 26, 1954–1 C. B. 153. In another ruling, Rev. Rul. 55, 1954–1 C. B. 153, with like conditions on retroactivity, the Commissioner held that where the estate of a deceased partner continues the decedent's interest during the winding-up period, the partnership continues during that period of liquidation.

Similar questions have been before this Court. In *Mary D. Walsh*, 7 T. C. 205, where there was no provision for continuation of partnership interests, we held that the death in 1939 of one of the three partners did not affect the taxable year of the partnership as to the surviving partners during the liquidation period.

Dissolution and complete liquidation of a partnership, accounting on a fiscal year basis, occurred within the calendar year 1941 of a partner in *Anne Jacobs*, 7 T. C. 1481, and we held that her distributive share of the profits for the fractional taxable year of the part-

---

[2] A phrase of like import appears in sec. 188 of the Internal Revenue Code of 1939.

nership was includible in income for 1941. See also *Louis Karsch*, 8 T. C. 1327.

By prior agreement the partnership interest of a deceased partner continued in *Estate of Samuel Mnookin*, 12 T. C. 744, affd. 184 F. 2d 89. There, following *Henderson's Estate* v. *Commissioner*, 155 F. 2d 310, reversing 4 T. C. 1001, we held that the accounting period of the partnership did not end with the death on December 1, 1943, of a partner and that the decedent's share of the earnings of the business for the period of its fiscal year from June 1, 1943, was not includible in his return for the taxable period January 1, 1943, to December 1, 1943. The case was cited in support of the conclusion reached in *Girard Trust Co.* v. *United States*, 182 F. 2d 921, on facts materially the same.

*Estate of Isidore Waldman*, 15 T. C. 596, revd. 196 F. 2d 83, involved facts similar to the *Mnookin* case. There, under the partnership agreement, the heirs or estate of a deceased partner could elect within 60 days to continue as a partner. The executor made a timely election but the surviving partners rejected it. Thereafter an agreement was reached under which the partnership was dissolved and liquidated as of January 31, 1946, a date within the partnership's fiscal year ending June 30. We held that the death of the decedent on November 22, 1945, did not end the taxable year of the partnership; that such year continued to January 31, 1946, when the partnership terminated, and that no part of the net income of the partnership for the period July 1 to November 22, 1945, was includible in the final return of the decedent for the period January 1 to November 22, 1945.

In *Estate of Joseph E. Tyree*, 20 T. C. 675, affd. 215 F. 2d 78, as in *Estate of Samuel Mnookin, supra*, there was an agreement for continuation of the partnership, and we held, following the *Mnookin* case and this Court's ruling in the *Waldman* case, *supra*,[3] that the death of a partner did not terminate the taxable year of the partnership as to him.

The cases before us here involve both the interest of the deceased partner and the sole surviving partner, without an express agreement for continuing the business and an unusual provision as to profits for the partnership taxable year in which a partner should die. The proceeding involving Frank will first be considered.

The partners had a statutory right to select a taxable year for the partnership different from their own, section 188, coupled with a requirement in section 182, *supra*, that their shares of the earnings of the business for the taxable period so selected be included in their individual income tax returns for the taxable year in which the partnership year ended, whether or not distributed. They also had an

---

[3] Nonacquiescence withdrawn, 1954-2 C. B. 6.

unrestricted right to agree upon rates of participation in the profits of the enterprise.

The partners here agreed upon withdrawals of profits, designated as salary, at the rate of $25,000 per year for each, payable on a monthly basis. Paragraph Eleven of the partnership agreement expressly provided that upon the death of a partner there should be paid to his estate in full settlement of the decedent's interest the amount to his credit at the beginning of the partnership year, less withdrawals over "salary." The "salary" payable to Frank prior to his death was $20,700, of which $18,887.50 was actually paid to him.

The effect of the agreement of the partners here was to fix the distributive share of a deceased partner in the partnership year in which his death occurred at an amount equal to the "salary" payable to him for the period prior to his death. So limited by express agreement, no right passed from the decedent to his estate to receive any amount for inclusion in a fiduciary income tax return for a subsequent period. See sec. 126 (a) (1) (A), I. R. C. 1939. The death of Frank eliminated the partnership as a continuing source of income to him as effectively as did the death of the partner in the *Guaranty Trust Co.* case, *supra.*[4] Howard so construed the agreement, as shown by the individual tax return he filed for 1948 in which he reported as taxable to him all of the ordinary net income of the partnership for its full accounting period, less the $20,700 distributable to Frank before his death.

Frank's death thus not only fixed the date of computation of his distributive share of the profits, but the amount thereof. The amount was earned during Frank's lifetime and no reason appears for delaying the reporting of such income until the end of an additional period, during which operations could not affect the amount of the share.

While there was no controversy in the *Guaranty Trust Co.* case as to the time of termination of the partnership year,[5] the rationale of the decision there, applied to the peculiar factual situation here, requires a conclusion that the partnership's taxable year as to Frank ended on the date of his death. Accordingly, we sustain the respondent on this point of the issue.

The peculiar facts of the case do not require a different conclusion as to Howard, the surviving partner.

The *Mellon* case, *supra*, is clearly distinguishable. There, the interest of the deceased partner continued with a right of his estate to share equally with the two surviving partners in the profits of the business during the liquidation period of about 5 years after dissolution. That situation did not prevail here.

[4] See comment of the United States Court of Appeals, *Commissioner* v. *Guaranty Trust Co.*, 89 F. 2d 693.

[5] See *Girard Trust Co.* v. *United States, supra; Estate of Isidore Waldman, supra;* and *Estate of Joseph E. Tyree, supra.*

Petitioners refer us to various provisions of the Uniform Partnership Act, in force in Maryland, which, they say, required liquidation proceedings and, therefore, a continuation of the business with usual tax consequences until the close of the fiscal year, even though only one partner survived.

We agree that some sort of a proceeding or transaction was necessary to bring about a termination of the partnership as a going business. Complete liquidation of the partnership involved in the *Guaranty Trust Co.* case, *supra*, and, therefore, termination of the taxable year, resulted from the transfer of the business, as of the date of death of the decedent, to a new partnership organized by the surviving partners. The means employed here were equally effective to terminate the partnership for income tax purposes as of the date of death of Frank.

The partnership agreement not only gave Howard the right to all profits of the business after the death of Frank, but all of the net income earned prior thereto during the fiscal taxable year selected by the partners, except "salary" distributable to Frank before his death. The agreement was so construed by Howard in reporting partnership income and making return of his and the estate's income, and no contrary contention is being made here by petitioners. The shares of partnership net income to Frank's death were thus determinable under the agreement and continuation of the business was unnecessary to determine distributive shares of partners, since operations could be only for the account of Howard.

Howard was not only entitled to receive all of the net income after Frank's death, but under the partnership agreement concurrently with that event acquired all of the interest of Frank, and with it the assets of the business, for an amount determinable under paragraph Eleven of the instrument. But petitioners point out that Frank's interest was subject to debts of the partnership created while he was a partner. Such obligations would constitute claims against the estate of Frank, and, if allowable, would reduce by a corresponding amount the cost to Howard for Frank's interest. Any rights of creditors against the surviving partner could be pursued against him as the successor of the business.

To conclude, our opinion is that the partnership agreement settled all matters between the partners and terminated the taxable year of the partnership as to Howard at the time of Frank's death. Accordingly, the determination of respondent as to Howard is sustained.

In computing the value of the decedent's partnership interest for inclusion in his gross estate, respondent included an amount as the value of the decedent's share of the net income of the business for the period of its taxable year ending with his death. The parties agree that if the value should include earnings of Frank from that source,

the correct amount is $154,972.05 representing one-half of net income of the partnership for the period, less $20,700 distributable as "salary."

The amount in controversy was not reported in the final income tax return of Frank, and, other than the $20,700, no amount was included by respondent in determining the deficiency. The income tax return of Howard for the calendar year 1948 included an amount for all of the net income of the partnership for the fiscal year ended January 31, 1948, less the $20,700 of earnings distributable to Frank for the period prior to his death. Respondent concedes on brief that Howard, under the partnership agreement, is taxable on all of the earnings for that period, and disagrees with petitioners only on the periods the profits are subject to tax.

While recognizing that the agreement entered into by the partners to determine their distributive shares of the earnings of the business makes the amount taxable to Howard and, therefore none taxable to Frank, respondent's action has placed him in a position of holding, in effect, that Frank had an interest in the earnings as property at the time of his death. He says that the value of the interest at death is not dependent upon the recipient of the earnings, while the gist of petitioners' contention seems to be that if Howard is taxable on the earnings Frank could not have had an interest in them at his death. Respondent says our conclusion is controlled by *Estate of Robert R. Gannon*, 21 T. C. 1073. Petitioners disagree with that case and distinguish it.

The agreement in the *Gannon* case required a valuation of the net assets of the partnership at the beginning of each year and an equal proportionment among the three partners as their investment in the business. Other provisions provided that on the death of a partner the survivors could elect to continue the business or liquidate it. If continued under the option, the estate of a deceased partner was to receive for the interest of the decedent at his death the amount previously fixed by all of the partners as the value at the beginning of the year; nothing for earnings to the date of death. If the survivors elected to liquidate the business, the estate of a deceased partner was to receive one-third of the proceeds of liquidation. The survivors elected to continue the business and, thereafter, in accordance with the partnership agreement, paid to the estate the sum agreed upon as the value of the decedent's interest at the beginning of the partnership year. Nothing was paid to the estate for profits earned by the business to the date of the decedent's death. Our conclusion under the circumstances was that the decedent's share of the earnings of the partnership for the partnership year prior to his death should be included in the value of the decedent's interest for estate tax purposes. Distinguishable facts are present here.

The two partners in the Knipp partnership saw fit for business convenience to qualify their rights to earnings. If they survived the partnership year, each was to receive one-half of the profits as his distributive share, and if one died during the year, as was the case, his distributive share was, by the occurrence of that event, to be limited to the earnings distributable as "salary." The right to a share of earnings in excess of "salary" was thus wholly contingent upon survival to the end of the accounting period, and until that contingency ceased to exist no partner had a vested interest in profits already earned. Frank never had during the crucial period more than a potential right to profits in excess of the amount designated as salary, and his death prevented that right from maturing. Not being entitled to any part of the $154,972.05 of profit at the time of his death, he had no interest to value for inclusion in his gross estate.

Death of a partner in the *Gannon* case did not, as here, completely destroy an unmatured right to a distributive share of earnings. Until the surviving partners exercised their option there remained the probability that liquidation would occur with the accompanying right of the estate of the deceased partner to profits. Here, liquidation was mandatory for the benefit of the survivor as to profits. The right of the decedent in the *Gannon* case to earnings was subject to a condition subsequent, and not a condition precedent, as here.

The difference in the facts in these proceedings call for a different conclusion. Accordingly, we find that no amount is includible in the estate of Frank as value for property interest in earnings of the partnership to the date of his death.

Under the settlement agreement entered into in 1951 with Maritime the partnership paid an amount for interest on an overpayment made in 1946. Of the amount paid, $8,656.67 was for interest accrued prior to January 31, 1947. One-half of the amount was charged to Frank's capital account as of January 31, 1947, and was allowed as a deduction by the respondent in determining the net income of the partnership for the year ended on that date. Notwithstanding such recognition of the amount as an accruable expense of the partnership, respondent now says on brief that the amount was not accruable prior to October 1, 1951, the date on which the Attorney General accepted the partnership's offer of settlement and requested payment of the interest, and that as the expense should have been borne in its entirety by Howard under paragraph Eleven of the partnership agreement the value of Frank's interest in the partnership for inclusion in gross estate should be increased by the amount of $4,328.34 charged to his capital account.

The action of respondent in allowing the amount of interest as a deduction in computing the net income of the partnership for the year ended January 31, 1947, infers a determination that liability to

pay interest existed at all times after the overpayment was made by Maritime in April 1946. The liability to pay was sufficient to accrue the interest at the end of the year as a deductible expense. No reason appears, under the circumstances, for not adjusting the capital account of Frank to reflect the accrued liability. Accordingly, we sustain the petitioners on this issue.

At the time of Frank's death the partnership was the beneficiary of 11 policies of insurance on his life, the proceeds of which amounting to $90,512.32, the respondent included in the decedent's gross estate under the provisions of section 811 (g) on the ground that the premiums were paid indirectly by the decedent. On brief respondent relies upon section 811 (g) (2), set forth, in part, in the margin,[6] which was included in the Internal Revenue Code of 1939 by section 404 (a) of the Revenue Act of 1942. Specifically, he says that proceeds of the insurance are includible in the gross estate of the decedent because the premiums were paid directly or indirectly by the decedent, and that at the time of his death the decedent possessed incidents of ownership exercisable either alone or in conjunction with another person.

The parties agree that all of the policies were assigned to the partnership with the exception of the one issued by the Sun Life Assurance Company of Canada. As to it, respondent says its value is includible in gross estate on an additional ground, namely, that the assured retained the right to change the beneficiary. Petitioners' reply to that contention is that the right to change the beneficiary was not retained in the assignment of the policy to the bank and when the bank reassigned the policy to the partnership the latter acquired the right to change the beneficiary.

The assignment to the bank as security for a loan was a contract separate and distinct from the contract of insurance. *New York Life Insurance Co.* v. *Dunlevy*, 214 F. 1, affd. 241 U. S. 518. The partnership, as the designated beneficiary of the policy, had no more than an expectancy under the insurance, which it assigned to the bank, whose economic interest in the policy never exceeded the amount of the partnership's indebtedness to it. The partnership never had the right to change the beneficiary and, therefore, could not assign it. Upon payment of the debt to the bank its interests in the policy ceased and its reassignment to the partnership obviously was merely to transfer

---

[6] SEC. 811. GROSS ESTATE.

  (g) PROCEEDS OF LIFE INSURANCE.—

    *      *      *      *      *      *      *

    (2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *

such rights as it had received from the partnership as assignee. Never having had a power of appointment over the policy, the partnership received none under the bank's reassignment. In short, the bank's transfer merely placed the parties where they stood before the first assignment was made. As the assured, decedent had the right to change the beneficiary, and that right continued to the time of his death.

The right of decedent to change the beneficiary was an incident of ownership and the proceeds of the policy are includible in gross estate under subsection (B) of section 811 (g) (2). *Estate of Judson C. Welliver*, 8 T. C. 165; *Estate of Eugene F. Saxton*, 12 T. C. 569; *Estate of Emil M. Goldblatt*, 16 T. C. 204; *Fried* v. *Granger*, 105 F. Supp. 564, affd. 202 F. 2d 150.

The parties agree that the other 10 policies of insurance constituted assets of the partnership at the time of the decedent's death. Respondent included the proceeds of the insurance in gross estate upon the ground that the premiums were paid indirectly by the decedent. Such insurance is includible in gross estate under subsection (A) of section 811 (g). On brief, while adhering to that view, he asserts that the proceeds are also includible under subsection (B), a provision independent of subsection (A). Petitioner argues that neither of the provisions requires the inclusion of the insurance as property possessed by Frank at his death. Thus, the difference between the parties is whether respondent's determination is sanctioned by either of the subsections.

Petitioner says that the answer to respondent's action under subsection (A) is found in what we said in *Estate of George Herbert Atkins*, 2 T. C. 332. Respondent seeks to distinguish that case upon the ground that it was decided under the statute before the amendment by the Revenue Act of 1942.

The precise question in the *Atkins* case was whether the policies of insurance held by and payable to a partnership on the life of the deceased partner were "taken out by the decedent upon his own life," the premiums having been paid by the partnership. In deciding that question we discussed at considerable length the interest of a partner in firm assets and concluded that the funds used to pay the premiums constituted partnership property and that:

the decedent did not actually pay, directly or indirectly, any part of the insurance premiums with funds belonging to him. * * * It [the partnership] chose to invest some of its funds in acquiring an asset, viz., the three insurance policies. It had full control over them and all legal incidents of ownership. * * * [p. 342]

So concluding we decided that the insurance was taken out by the partnership rather than by the decedent upon his own life. While the death in that case occurred in September 1939, and the issue

was controlled by the statute then in effect, the conclusion as to payment of the premiums was reached in the light of the amendment made by section 404 of the Revenue Act of 1942.

The purpose of the provision was to prevent avoidance of the estate tax. H. Rept. No. 2333, 77th Cong., 2d Sess., p. 162; S. Rept. No. 1631, 77th Cong., 2d Sess., p. 235. There is no indication here of a plan to avoid estate tax. To the contrary, the acquisition of the insurance appears to have been nothing more than the purchase of a partnership asset in the ordinary course of business. The funds so used were partnership property and the decedent's interest in the partnership was no more than his share of the profits and surplus, as defined in the partnership agreement. Flack's Ann. Code of Maryland, art. 73A, secs. 8 and 26.

Respondent quotes, without discussion, from Regulations 105 to the effect that a decedent pays the premiums if payment is made by a corporation which is his alter ego, or by a trust, the income from which is taxable to him. Like statements appear in the Committee reports, *supra*. There is no such similarity here, for Frank's interest in profits never exceeded 50 per cent and Howard had at all times an equal voice as to partnership matters.

No reason appearing for departing from the reasoning of the *Atkins* case, *supra*, on this point, we conclude that the insurance proceeds are not includible in the gross estate under subsection (A).

Respondent relies upon the rationale of *Commissioner* v. *Treganowan*, 183 F. 2d 288, reversing 13 T. C. 159, followed in *Estate of William E. Edmonds*, 16 T. C. 110, and *Estate of Emil M. Goldblatt*, *supra*, to support his present view that the decedent possessed incidents of ownership in the insurance at the time of his death.

In the *Treganowan* case the New York Stock Exchange, of which the decedent was a member at the time of his death, had a plan to pay $20,000 to, in general, the family or heirs of a deceased member. A member's right to designate a beneficiary under the plan, held to be insurance, was limited to the members of the designated group. The power of a member to sell his seat on the Exchange, with the insurance rights that would go with it, was regarded as sufficient to make him the owner of the insurance for the purposes of subsection (B). In the *Goldblatt* case it was stipulated that the "decedent possessed all of the incidents of ownership in both policies to the date of his death" and, therefore, the question here was not before us for decision.

Respondent concedes that the insurance was an asset of the partnership and that Frank had no rights in the policies other than those flowing from his partnership interest. The inference from such con-

cessions is that Frank, in his individual capacity, had no incidents of ownership in the policies, and respondent cites no specific fact of ownership.

One of the conclusions reached in the *Atkins* case, *supra*, in deciding that the policies of insurance were taken out by the partnership rather than by the decedent there, was that the firm had complete control over them and held all of the incidents of ownership. The material facts here are the same. Nothing in the *Treganowan* case requires a contrary conclusion. Decedent, as an individual, had no power to exercise rights of ownership over the assets and sale of his partnership interest would not have transferred any rights in specific assets of the firm. *United States* v. *Shapiro*, 178 F. 2d 459. Accordingly, we hold that the proceeds of the 10 policies do not constitute assets of Frank's estate.

*Decisions will be entered under Rule 50.*