ESTATE OF JOHN A. HANCE, PERCY L. HANCE, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34153.   Promulgated June 11, 1952.

*Alexis C. Coudert, Esq.*, for the petitioner.
*Rigmor O. Carlsen, Esq.*, for the respondent.

OPINION.

OPPER, *Judge:* Respondent determined a deficiency in estate tax of $125,580.69, based on a number of adjustments of which only one now remains in controversy. An overpayment of $14,791.55 is claimed. The single issue relates to the valuation of seven survivorship annuities taken out by decedent during his life. All of the facts have been stipulated and are hereby so found. The estate tax return was filed with the collector for the third district of New York.

The factual background and the question presented are well summarized in petitioner's brief from which we quote verbatim (pp. 2–3) :

 * * * Decedent John A. Hance died February 22, 1947, survived by his widow. The estate tax return was duly filed and the executor elected to have the gross estate valued as of the optional date in accordance with Section 811 (j) of the Internal Revenue Code. Among the assets reported in the return were seven single premium annuity contracts issued by five life insurance companies. Each of these contracts provided for the payment of a specified annuity to decedent during his lifetime and thereafter to his widow for her life. The widow died May 15, 1947, at the age of 83 years and 9 months. In the estate tax return these contracts were valued at an aggregate amount of $44,632.92. This valuation was arrived at by discounting at the rate of .4% the total payments which would have been received by the widow on the basis of her life

expectancy at the time of decedent's death, without regard for the fact that she died on May 15, 1947. For present purposes it is conceded that this method of valuation was incorrect.

The Commissioner has determined that these contracts should be valued on the basis of the cost of similar policies issued on the date of decedent's death to a female applicant of the same age as the surviving widow. It has been stipulated that the total cost of such policies would be $121,905.27 * * *. This increase in the valuation of the annuities, coupled with several minor changes not in issue, results in the assessed deficiency of $125,580.69.

Petitioner concedes that the Commissioner has correctly valued the annuity policies as of the date of decedent's death but contends that, because of the election to have the estate valued as of the date one year after death, the Commissioner erred in failing to allow an adjustment for the difference in value as of the later date not due to mere lapse of time.

The point where the parties are really at odds is the correct interpretations of section 811 (j), Internal Revenue Code, reading as follows:

(j) OPTIONAL VALUATION.—If the executor so elects upon his return (if filed within the time prescribed by law or prescribed by the Commissioner in pursuance of law), the value of the gross estate shall be determined by valuing all the property included therein on the date of the decedent's death as of the date one year after the decedent's death, except that (1) property included in the gross estate on the date of death and, within one year after the decedent's death, distributed by the executor (or, in the case of property included in the gross estate under subsection (c), (d), or (f) of this section, distributed by the trustee under the instrument of transfer), or sold, exchanged, or otherwise disposed of, shall be included at its value as of the time of such distribution, sale, exchange, or other disposition, whichever first occurs, instead of its value as of the date one year after the decedent's death, and (2) any interest or estate which is affected by mere lapse of time shall be included at its value as of the time of death (instead of the later date) with adjustment for any difference in its value as of the later date not due to mere lapse of time. No deduction under this subchapter of any item shall be allowed if allowance for such item is in effect given by the valuation under this subsection. Wherever in any other subsection or section of this chapter, reference is made to the value of property at the time of the decedent's death, such reference shall be deemed to refer to the value of such property used in determining the value of the gross estate. In case of an election made by the executor under this subsection, then for the purposes of the deduction under section 812 (d) or section 861 (a) (3), any bequest, legacy, devise, or transfer enumerated therein shall be valued as of the date of decedent's death with adjustment for any difference in value (not due to mere lapse of time or the occurrence or nonoccurrence of a contingency) of the property as of the date one year after the decedent's death (substituting the date of sale or exchange in the case of property sold or exchanged during such one-year period).

Petitioner insists, and we agree, that the present situation falls squarely within the language of (2) and that the property must accordingly "be included at its value as of the time of death * * * with adjustment for any difference in its value as of the later date not due to mere lapse of time."

The error of respondent's position may be described as his insistence that the widow's actual intervening death did not affect the value of the annuities on the optional date because the possibility of her death within that period was one of the factors taken into account in appraising the property as of the date of decedent's death.

But possibility is all that an actuarial computation can deal with. Actuality is an opposite concept. If we were confined to an appraisal of the facts as they existed at decedent's death, the possibility would be the limit of our concern, as it was in *Ithaca Trust Co.* v. *United States*, 279 U. S. 151. And if, as in *Estate of Judson C. Welliver*, 8 T. C. 165, the widow had not yet died on the optional date, the limitation to actuarial estimates would be as necessary under section 811 (j) (2) as it was under the earlier provision construed in the *Ithaca Trust* case.

The present situation was, however, envisioned, and we think correctly dealt with, in the *Welliver* case, where we said, referring to the actual intervening death of an annuitant: " * * * by such event the interest or estate would not be affected merely by the lapse of time, and express provision is made for adjustment on the later date because of a contingency other than the lapse of time."

Respondent in fact expressly disavows any contention "that death is an event due to mere lapse of time." But it was precisely the widow's death which made the annuities totally worthless by the time the optional date arrived. The statute requires "adjustment for [such] difference in its value as of the later date * * *," and there is of course nothing in respondent's regulations to the contrary.

Petitioner proposes to make the requisite adjustment by comparing the cost of annuities of the character involved on the date of decedent's death and of that of the widow. The difference, slightly over $5,000, which is in effect the value of the payments during the interval, is treated as the amount due to mere lapse of time. This appears reasonable considering that an annuitant situated as was decedent's widow would collect the differential by merely remaining alive.

Since it is this figure which represents the value "due to mere lapse of time," the balance of the amounts attributable to the annuities as of decedent's death was lost by the optional date due to causes other than mere lapse of time—in this instance by the widow's prior death. The upshot is to make an adjustment for the latter event amounting to the difference between the values at decedent's death and the $5,000-odd representing the differential in values which seems to meet precisely the statutory direction to value the property as of decedent's death, "with adjustment for any difference in its value as of the later [optional] date not due to mere lapse of time."

The ultimate effect of this process is to include in the estate the figure representing in substance the payments actually received by the

widow, notwithstanding that as of the optional date the annuities were entirely worthless. It is a reasonable result, since that is what turned out to be the dimensions of the property which decedent actually left, and it neither excludes the entire amount nor includes all of an item which by the optional date had ceased to exist. That is exactly what Congress said and we see no reason why they should not also have meant it.

To permit computation of the overpayment,

*Decision will be entered under Rule 50.*