MURRAY THOMPSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KIBBEY W. COUSE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 25005, 25006. Promulgated January 11, 1954.

*Benjamin Alpert, Esq.*, and *Israel B. Greene, Esq.*, for the petitioners.
*John E. Mahoney, Esq.*, for the respondent.

SUPPLEMENTAL FINDINGS OF FACT AND OPINION SUR MANDATE.

RAUM, *Judge:* These cases are here on remand from the Court of Appeals for the Third Circuit. 205 F. 2d 73. The parties have stated

that they do not wish to present any further evidence, but petitioners did request the opportunity for oral argument and the filing of additional briefs. Such request was granted. Oral argument was had; additional briefs have been filed and considered

The essential facts have already been found (18 T. C. 361). Both petitioners and respondent were asked whether either desired this Court to make any additional findings (apart from the value of the contracts), but neither side has requested any further findings. We think the facts already found, together with a finding of value of the contracts based on the evidence (if such finding can be made), are sufficient to dispose of the only issue which the parties presented on the remand.

When these cases were here before, we held that the contracts had no basis in the hands of the partnership because, by reason of prohibitions against assignment, there was nothing of value that petitioners could contribute to the partnership, and we found that "The partnership acquired nothing of value from the petitioners in relation to the war contracts of Couse Laboratories, Inc., that it could not or did not obtain itself without cost." By reason of the decision of the Court of Appeals, that conclusion must be put aside.

We are now faced with two questions: First, whether the contracts, assuming that they had a fair market value upon dissolution of the corporation, have a basis in the hands of the partnership that must be recovered in arriving at the taxable gain attributable to such contracts; and secondly, what is that fair market value?

If the contracts did in fact have a fair market value on October 31, 1942, they had a basis when contributed to the partnership, and such basis must be taken into account in computing the profits derived from such contracts. *U. S. Industrial Alcohol Co.*, 42 B. T. A. 1323, affirmed 137 F. 2d 511 (C. A. 2), is distinguishable, because in that case, as pointed out in the concurring opinion, 42 B. T. A. at p. 1393, the taxpayer had failed to show that the contracts involved "had any particular basis." We pass therefore to consider the question as to what, if any, fair market value the contracts before us had when they were contributed to the partnership upon dissolution of the corporation.

The Commissioner asks us to find that petitioners have not proved any ascertainable fair market value for the contracts and urges that his determination of a zero basis must therefore be approved. Petitioners, on the other hand, insist that they have proved a fair market value of between $750,000 and $800,000. We reject the Commissioner's contention that no fair market value can be found. Difficult as the task is, it is not insuperable, and we think that a fair market value can be found on the evidence before us, assuming that we ignore,

as we must by reason of the mandate of the Court of Appeals, the prohibitions against assignment. However, for reasons outlined below, we cannot accept the valuation requested by petitioners.

Both petitioners testified as to value, but their testimony in this respect was weak and unconvincing. Petitioner Couse testified that he would have been willing to sell the entire business, including tangible assets of about $180,000 in addition to the contracts, for "around $750,000 or $800,000." Petitioner Thompson was asked what he would have paid if he were negotiating with Couse "to buy the entire business," and he answered "somewhere around $800,000." It was all too apparent from his testimony that he had but little insight in the problem, and petitioner's own witness, Riley, who had been financial vice president of Couse Laboratories, Inc., testified that both Thompson and Couse were "hopelessly lacking in financial thinking."

Of the remaining witnesses on value, Riley and Wetzel, we regard Wetzel as the more reliable. Yet the valuations given by both, related not to the contracts in question, but to the business as a whole. The hypothetical question put to Riley was phrased in terms of "what price would you look for in selling this business for * * * ?" Wetzel was asked what he as a buyer would have paid "for acquiring the right to complete these contracts as part and parcel of the going business, with the personnel and everything else available thereto * * *." And from his testimony we find it all too clear that the $750,000 valuation made by him included the purchase not merely of the contracts but of an integrated business with plant, machinery, and personnel capable of executing the contracts.[1]

Moreover, Wetzel's testimony assumed that there was virtually a "sure bet," whereby he would merely put up $750,000, and then recoup his investment plus profits within 6 months. We are satisfied from his testimony as a whole that he did not give adequate consideration to some factors that were actually present, and which in our judgment should have seriously affected any conclusions as to value. For example, he gave insufficient weight to the fact that the contracts were subject to renegotiation. Subsequent events fully confirm the seriousness of this factor that he treated so casually in his calculation, for the evidence before us shows that as a result of renegotiation profits of the partnership were actually reduced by $475,000 for the fiscal year

---

[1] While it is true that Wetzel was interested primarily in the profits to be derived from the contracts rather than obtaining the business as a whole, the important thing is that he wouldn't consider buying the contracts alone and that he would be interested in acquiring them only if there were present the means of executing them. Accordingly, his valuation included the price that he would pay for the contracts plus a going business capable of fulfilling the contracts. That valuation, therefore, cannot be regarded as the value of the contracts themselves. Not only did the business have physical assets of substantial value but the very fact that it had trained employees and management familiar with the problems involved was itself an element of value to anyone seeking to execute the contracts in question.

ended November 30, 1943. His testimony also assumed availability of all materials with which to complete the contracts. The evidence shows, however, that a substantial portion of the materials was not on hand, being merely "on order," and some of the materials had not even been ordered from the suppliers. It must be remembered that at the time in question the country was at war, and the uncertainties and delays that are possible in a war economy are matters that cannot be treated lightly.[2] In fact, the contracts in question required more than a year to perform rather than the estimated 6 months, and we do not know from the evidence what caused the delay.

Another element, not incorporated in the hypothetical questions and not, in our judgment, adequately taken into account by the witnesses, was that the contracts contained termination clauses. This was a factor to which a prospective purchaser certainly would have given serious consideration. Although it is true that the termination clause protected the contractor against loss and indeed provided a formula for computing profit on unfinished work, the fact is that the total profit obtainable upon termination would have been substantially less than if the contracts were fully completed.

We have not set forth in full the various respects in which we think that the valuations proposed by petitioners' witnesses are faulty. The foregoing discussion is intended to show merely in a general way that we cannot accept the $750,000 to $800,000 valuations as representing the fair market value of the contracts. However, we do not reject in toto the evidence presented by these witnesses. Their testimony was helpful, and we have taken it into account. Using our best judgment on the entire record it is our conclusion and we so find as a fact that the contracts in question had a fair market value of $250,000 when the corporation liquidated and when they were contributed to the partnership.

*Decisions will be entered under Rule 50.*

---

[2] Wetzel indicated that he did take this factor into account. But we are left in doubt as to the weight which he gave to it. Our impression from his testimony is that it did not play a substantial part in his thinking. And Riley's testimony fails to show that the availability of all materials necessary to complete the contracts presented any problem.