Morton Ollendorff, et al. [1] v. Commissioner. Ollendorff v. Commissioner
Docket Nos. 56744-56747.
United States Tax Court
T.C. Memo 1959-55; 1959 Tax Ct. Memo LEXIS 193; 18 T.C.M. (CCH) 263; T.C.M. (RIA) 59055; March 24, 1959
Karl W. Windhorst, Esq., 125 Park Avenue, New York, N.Y., and Sheldon V. Ekman, Esq., for the petitioners. John J. O'Toole Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion KERN, Judge: The deficiencies in income tax determined by respondent and in controversy in these consolidated cases are as follows: Docket
Deficiency
Number
Petitioner
1944
1945
56744
Morton Ollendorff
$139,524.11
$56,880.11
56745
Herbert Ollendorff
138,510.48
56,942.23
56746
Carrie Ollendorff
85,241.33
56747
Estate of Walter Ollendorff (3/21 to 12/31/44)
168,560.99
55,704.10 [2]
*194 For the year 1944, overpayments in income tax are claimed in the amounts of $44,000 by Morton Ollendorff, $44,000 by Herbert Ollendorff, $86,000 by Carrie Ollendorff, and $19,600 by the Estate of Walter Ollendorff. The issue for decision are as follows: 1. What was the fair market value of a merchandise inventory on July 30, 1943, when received as liquidating distributions of a corporation and contributed to a partnership trading under the name of Ollendorff Watch Company, for the purpose of determining the partnership's opening inventory and distributable income for its fiscal year ended July 31, 1944. 2. Whether, in determining distributable income for the fiscal year ended July 31, 1944, the partnership of Ollendorff Watch Company is entitled to a deduction for amortization of unfilled orders for Swiss merchandise placed by a corporation prior to liquidation and subsequently filled and shipped to the partnership. 3. Whether, upon the formation of the partnership trading under the name of Ollendorff Watch Company, Morton, Herbert, and Walter Ollendorff each acquired only a one-eighth interest therein, for the purpose of determining the distributive shares of the income *195 of the partnership for the taxable periods involved herein, or, as respondent contends, they are to be considered as each owning a one-fourth interest therein for the reason that their respective wives were not partners "for federal income tax purposes." [3]
*196 4. In Docket No. 56747, Estate of Walter Ollendorff, deceased, whether the death of Walter Ollendorff on March 20, 1944, terminated the two partnerships, Ollendorff Watch Company and Ollen Distributors, insofar as the deceased partner is concerned, so that the income earned by each partnership from the beginning of its taxable year to March 20, 1944, was properly included in the decedent's final return and excluded from the income of the estate for the taxable period March 21 to December 31, 1944. In the case of Carrie Ollendorff, Docket No. 56746, the petitioner alleged that respondent erred in failing to allow a deduction of $960.35 for income tax paid to the State of New York in 1944, and respondent's answer denies error. No proof was adduced at the hearing and no mention was made on brief with respect to this issue, which is deemed to have been abandoned. Findings of Fact Some of the facts have been stipulated. We incorporate herein by this reference the stipulation of facts and the exhibits attached thereto and identified therein. The petitioners, Morton, Herbert, and Carrie Ollendorff are residents of New York, New York, and each filed separate income tax returns on *197 the cash basis for the calendar years involved herein, with the collector of internal revenue for the third district of New York. The petitioner in Docket No. 56747 is the duly qualified administrator of the Estate of Walter Ollendorff, deceased, with principal office at 20 West 47th Street, New York, New York, and the fiduciary income tax returns on the cash basis for the taxable period March 21 to December 31, 1944, and the calendar year 1945 were filed with the collector of internal revenue for the third district of New York. In the latter case the petitioner's decedent, Walter Ollendorff, died on March 20, 1944. Ollendorff Watch Co., Inc., was a New York corporation, organized in 1904, with offices at 20 West 47th Street, New York, New York. During the years immediately preceding its liquidation on July 30, 1943, that corporation was engaged in the business of importing, assembling, and wholesaling watches and clocks. Its imports were from Switzerland and its sales were made primarily to retail jewelers and department stores. Immediately prior to February 1, 1943, all of the issued and outstanding common stock of the Ollendorff Watch Co., Inc., consisting of 7,500 shares, was *198 owned by Morton, Herbert, Walter, and Carrie Ollendorff, in the amount of 1,875 shares each. On February 1, 1943, Morton, Herbert, and Walter Ollendorff each made a gift of 937 1/2 shares of common stock of the Ollendorff Watch Co., Inc., to his wife, namely, E. Charlotte, Leah B., and Helen Ollendorff, respectively. Each of those donors duly filed a Federal gift tax return for the year 1943 reporting such gifts of stock. As of February 1, 1943, and also July 30, 1943, the issued and outstanding common stock of the Ollendorff Watch Co., Inc., consisting of 7,500 shares, was owned by Morton, Herbert, Walter, E. Charlotte, Leah B., and Helen Ollendorff, in the amount of 937 1/2 shares, respectively, and by Carrie Ollendorff in the amount of 1,875 shares. On July 30, 1943, the stockholders of Ollendorff Watch Co., Inc., voted to liquidate and dissolve the corporation and to transfer to themselves all the corporate assets, in kind, subject to the assumption of all corporate debts and liabilities. The corporation was duly liquidated and dissolved on July 30, 1943. On July 31, 1943, a partnership trading under the name of Ollendorff Watch Company (sometimes hereinafter referred to *199 as the Ollendorff partnership) was formed by all the individuals who were formerly stockholders of Ollendorff Watch Co., Inc., and each acquired a partnership interest in the same proportion as his respective ownership of stock in the dissolved corporation. Those individuals effected the transfer of the distributed assets and liabilities to the newly organized Ollendorff partnership by having the corporation execute an assignment in favor of the partnership. The Certificate of Partnership executed by all the partners was filed on August 16, 1943, with the County Clerk of New York County. The Ollendorff partnership adopted a fiscal year beginning August 1 and ending July 31 for both accounting and tax purposes, and kept its books of accounts and filed its tax returns on the accrual method of accounting. The partnership was engaged in the business of importing, assembling, and wholesaling watches, and maintained offices at 20 West 47th Street, New York, New York. For the purpose of determining the amount of capital gain reported for 1943 by all the stockholders on liquidation of the Ollendorff Watch Co., Inc., the net assets distributed to them in kind were valued on the basis of *200 the corporation's balance sheet figures for all such assets as at July 30, 1943, except that an appraised value was substituted for the corporate book cost for the closing inventories for merchandise on hand and Swiss merchandise which had been purchased and was in transit on that date. In making the appraisal, each inventory item was valued separately at the wholesale price level in selling to retailers under the then existing business conditions and the Office of Price Administration ceiling prices. The corporate book cost of the closing inventories for merchandise on hand and in transit as at July 30, 1943, and the appraised values substituted therefor, for the purpose of computing capital gain, were as follows: Corporate
Appraised
Book Cost
Value
Merchandise on hand
$395,101.90
$ 639,414.79
Merchandise in transit
239,318.71
365,453.21
$634,420.61
$1,004,868.00 In arriving at that valuation there was an inadvertent omission of the value of certain items of merchandise in transit which were included in the corporate closing inventory at a cost of $48,459.95. Such omitted items of merchandise in transit had a value of at least $75,000 as at July 30, 1943. *201 The opening inventory of the Ollendorff partnership, as at August 1, 1943, included the identical on-hand and in-transit merchandise embraced in the closing inventories of the Ollendorff Watch Co., Inc., as at July 30, 1943, at the same value which the contributing partners had used in determining gain on receipt of the same merchandise on liquidation of the corporation. In the profit and loss statement of the partnership for the 12 months ended July 31, 1944, the corporate closing inventories, compromising both merchandise on hand and in transit which were contributed by the partners, appear as the opening inventory in the amount of $1,004,868. In the year 1942 Congress enacted the Emergency Price Control Act of 1942 which established the Office of Price Administration for the purpose of regulating the prices for which merchandise could be sold. Regulations, together with amendments, fixing maximum selling prices were issued by the Office of Price Administration. During 1943 domestic watch importers and wholesale watch distributors were subject to priority regulations and orders issued by the War Production Board. During 1943 all the facilities of domestic watch manufacturers were *202 converted and devoted to national defense work by reason of the United States being engaged in World War II. There was no domestic production of watches and watch movements for civilian use over a period of years, including 1943. During the war years there were restrictions on the purchase and delivery of Swiss watches and watch movements due to a quota system established by the Swiss manufacturers and there were time lags varying from 8 to 15 months between the placing of an importer's order, the manufacture of the merchandise, and receipt of the shipment in New York. The Ollendorff Watch Co., Inc., prior to its liquidation on July 30, 1943, determined its wholesale level of selling prices for watches and clocks by adding its normal markup ranging from 55 per cent to 65 per cent of the total actual cost of each item of merchandise. On imported Swiss merchandise the "landed" cost (that is, the cost of merchandise received in New York) embraced primarily the foreign invoice cost price converted into United States dollars plus expenses incurred for import duty, freight, insurance, brokerage commissions, etc., which expenses generally amounted to approximately 65 per cent of the foreign *203 invoice cost price charged by the Swiss manufacturer. During 1943 the demand for watches in the United States far exceeded the supply and the wholesaler-importers, including the Ollendorff Watch Co., Inc., adopted voluntary selling quota systems restricting the number of watches sold to their customers. On July 30, 1943, there was a demand by retail jewelers and other retailers for all the merchandise embraced in the closing inventories, both on hand and in transit, of the Ollendorff Watch Co., Inc. Such merchandise could have been sold immediately at the wholesale level at prices not in excess of those established and permitted by the O.P.A. regulations which recognized the normal or so-called historic markup of wholesalers-importers. The closing merchandise inventories of the Ollendorff Watch Co., Inc., on July 30, 1943, when received as liquidating distributions to the stockholders and by them contributed to the partnership trading under the name of Ollendorff Watch Company, had a fair market value of $639,414.79 for the merchandise on hand and $440,453.21 for the merchandise purchased and in transit, or a total fair market value of $1,079,868 for the purpose of determining *204 the partnership opening merchandise inventory on August 1, 1943, and its distributable income for the fiscal year ended July 31, 1944. Immediately following August 1, 1943, and due to the Swiss manufacturers' quota system, the Ollendorff partnership, through its Swiss agent, made inquiries as to 1943 and 1944 quotas for Swiss watches and clocks and the placement of orders for such merchandise. The partnership was advised that no new orders would be accepted for Swiss merchandise for the balance of the year 1943. During the months of August, September, and October 1943, the Ollendorff partnership took steps to establish a 1944 Swiss quota for the importation of approximately 100,000 watch and clock movements from Swiss manufacturers. The Ollendorff Watch Co., Inc., as of the date of liquidation on July 30, 1943, had unfilled orders or purchase commitments theretofore placed under a quota with Swiss manufacturers for watches and watch movements totaling approximately $325,000 computed on the basis of foreign invoice cost prices exclusive of shipping, insurance, and duty expenses. These orders, some of which had been placed as long as a year prior to July 30, 1943, were filled and *205 the merchandise was shipped by the Swiss manufacturers to the Ollendorff partnership subsequent to August 1, 1943. The Ollendorff partnership's foreign purchases of Swiss merchandise totaled approximately $296,600 for the 12-month period ended July 31, 1944, of which approximately $285,000 was for merchandise received pursuant to orders previously placed by the Ollendorff Watch Co., Inc., as mentioned in the next preceding paragraph. The foreign merchandise totaling $296,600 and consisting of watches and watch movements was received by the partnership after January 1, 1944. The only merchandise received by the partnership prior to January 1, 1944, was that which had been purchased by Ollendorff Watch Co., Inc., prior to its liquidation and was in transit on August 1, 1943. Without the receipt of the foreign merchandise shipments after January 1, 1944, pursuant to the corporation's previous orders, the partnership would have had little, if any, merchandise for sale to its customers during the latter part of its first fiscal year of operation. In the importing and wholesaling business of the character carried on by both the Ollendorff Watch Co., Inc., and the Ollendorff partnership, *206 it was essential to have a source of merchandise for the continued operation of the business. Under the conditions existing during 1943, due to the necessity of obtaining a Swiss quota for the placing of orders for merchandise and the lapse of time required for the filling of such orders, the corporation's unfilled orders or purchase commitments at the time of its liquidation on July 30, 1943, constituted a valuable asset when received by the stockholders as a liquidating distribution and contributed to the partnership. At that time such unfilled orders would have been purchased by other importer-wholesaler concerns at a fair price which took into consideration the foreign invoice cost price to be paid for the merchandise, the usual markup for resale, and a reasonable discount for the hazards and delay in delivery. The corporation's unfilled orders totaling $325,000 had a fair market value of $138,000 on July 30, 1943. Immediately prior to liquidation of the Ollendorff Watch Co., Inc., on July 30, 1943, the stockholders contemplated that a partnership would be formed to carry on the business theretofore conducted by the corporation. Upon liquidation of the corporation each of the *207 stockholders had the freedom of choice to receive his or her aliquot part of the corporate assets without restriction as to subsequent disposition thereof. The recipient stockholders voluntarily contributed the assets received as a corporate liquidating distribution to the newly formed partnership trading under the name of Ollendorff Watch Company. The purpose of dissolving the corporation and forming the partnership was to obtain tax benefits available by reason of such change and, also, at the same time to continue the business of importing and selling at wholesale Swiss watches and watch movements. The Ollendorf partnership, at all times during its existence, operated in accordance with the written partnership agreement executed by each of the seven partners on July 31, 1943. That agreement provided, in Article 1, for the continuance of the partnership "for a term of ten years," and further provided, in part, as follows: "3. The capital of the partnership contributed by the partners shall be all the assets received by them as stockholders of Ollendorff Watch Co., Inc., in kind, in the liquidation of said corporation * * *
"The parties hereto own the capital stock of said *208 corporation as follows: "Carrie Ollendorff - one-fourth. The other parties hereto - one-eighth each. "4. The profits and losses of the partnership (after the deduction of salaries as an expense of the business as mentioned in Article 8) shall be shared and borne in the following proportion: "Carrie Ollendorf - 25%. Each of the other partners - 12 1/2%. * * *
"6. There shall be maintained at all times full and accurate books of account and records of all matters relating to the business of the partnership and all such books, accounts and records shall be available to and open for the inspection of any of the partners, his or her executors or administrators, or the duly appointed agent or agents thereof. Each partner shall upon every reasonable request give to the others a true account of all transactions relating to the business of the partnership and full information of all letters, accounts, writings, and other things which shall come into his or her hands or to his or her knowledge concerning the business of the partnership. "7. The funds of the copartnership shall be deposited in such bank or banks as shall be mutually agreed upon. Checks and promissory notes shall *209 be drawn in the firm name and signed by any of the partners. "8. Herbert, Morton and Walter Ollendorff each are to receive salaries of Fifteen Thousand Dollars per annum and Carrie Ollendorff shall receive a salary of Four Thousand Four Hundred Dollars per annum, all to be treated and deducted as an expense of the business before arriving at its net profit or loss to be shared and borne by the partners. "9. Stock shall be taken semi-annually - twice a year - and each partner's account shall be credited with the profits at the end of the fiscal year, to wit, July 31st. * * *
"11. No part of the capital or profits shall be drawn during the ten year term of the partnership, while all are living, except by the unanimous consent of all the partners. * * *
"13. (a) The continued existence of the partnership shall not be affected by the death, withdrawal or change in interest of any of the partners, and in any such event, the partnership shall continue until the date fixed for the termination and expiration thereof as provided in Article 1. "(b) Upon the termination and expiration of the partnership, the business of the partnership shall be liquidated and the assets * *210 * * shall be distributed to the partners or their representatives, in accordance with their respective interests, * * * "14. (a) In the event of the death of Carrie Ollendorff, the remaining partners shall become the owners of her interest in the partnership for the book value thereof based on the last preceding monthly balance sheet, * * * "(b) In the event of the death of Leah B. Ollendorff, E. Charlotte Ollendorff or Helen Ollendorff, her husband her surviving shall have the option for thirty days after the appointment of the legal representatives of her estate, to purchase her interest in the business for the price to be fixed and payable as provided in subdivision (a) of this Article. * * * If he fails to exercise the option, all the surviving partners including the surviving husband, shall become the owners of the decedent's interest in the partnership for the book value thereof, the price to be fixed and paid as provided in sub-division (a) of this Article. "(c) In case of the death of Herbert Ollendorff, Morton Ollendorff or Walter Ollendorff, the interest of the decedent shall be determined at the next annual or semi-annual stock taking, whichever first occurs. Stock *211 shall be taken as theretofore and nothing shall be figured or allowed for good will, patents, licenses, trademarks, tradenames or similar assets. The legal representatives of the decedent's estate may offer, within six months from the appointment of an executor or administrator of his estate, to sell the decedent's share together with the widow's share, to the remaining partners and the surviving partners, if such offer is made, agree to purchase the same or liquidate the business. The decedent's widow agrees that her share shall be included in the sale. In the event of such a sale, the decedent's estate shall receive the value of his interest determined as aforesaid, payable as provided in Article 14(a). The decedent's widow shall receive (1) the value of her interest determined in the same manner, to wit, * * *
"In the event the decedent's estate and the decedent's widow do not offer to sell both their interests to the survivors within such period of six months, they shall retain their respective interests in the business and the partnership shall not be dissolved by the death and it shall continue as aforesaid. * * *" During the existence of the Ollendorff partnership, *212 all the partners made substantial withdrawals of earnings. Subsequent to the death of Walter Ollendorff on March 20, 1944, the decedent's estate participated as a partner, pursuant to the provisions of the partnership agreement, until the Ollendorff partnership ceased doing business on April 30, 1945, and its existence was duly terminated. On May 1, 1945, following the termination of the partnership, a new corporation, namely, Ollendorff Watch Co., Inc., was duly organized under the laws of the State of New York to which the former partners, with the exception of the Estate of Walter Ollendorff, transferred assets in exchange for stocks and bonds as follows: Shares of
6%, May 1,
Assets
100 par value
1960 Bonds
Transferred
Stock Issued
Issued
Herbert Ollendorff
$ 71,428.57
142 6/7
$ 57,142.86
Morton Ollendorff
71,428.57
142 6/7
57,142.86
Leah Ollendorff
71,428.57
142 6/7
57,142.86
E. Charlotte Ollendorff
71,428.57
142 6/7
57,142.86
Helen Ollendorff
71,428.57
142 6/7
57,142.86
Carrie Ollendorff
142,857.15
285 5/7
114,285.70
$500,000.00
1,000
$400,000.00
The new corporation, namely, Ollendorff Watch Co., Inc., during *213 the years following its formation on May 1, 1945, paid dividends on stock and interest on bonds; also some of the bonds were retired by the new corporation. All monies received by Leah Ollendorff, E. Charlotte Ollendorff, and Helen Ollendorff from the partnership during its existence and upon dissolution or from the new corporation with respect to their ownership of stocks and bonds were deposited by them in their own individual bank accounts and were used for their own personal benefit without any restriction whatsoever. Walter Ollendorff, prior to his death on March 20, 1944, in addition to being a partner of Ollendorff Watch Company, was a partner of Ollen Distributors which was engaged in the wholesale jewelry business, except dealing in watches and clocks. Ollen Distributors kept its books of account and filed its tax returns on the calendar year basis. Under the partnership agreement executed on April 21, 1943, Morton, Herbert, and Walter Ollendorff were equal partners in Ollen Distributors with the profits and losses to be shared and borne one-third each. The Ollen Distributors partnership agreement contained numerous provisions essentially similar to those in the Ollendorff *214 Watch Company partnership agreement, particularly with respect to the continued existence of the partnership not being affected by the death of a partner, the determination of the deceased partner's interest, and the other provisions related to the event of the death of a partner. Walter Ollendorff's share of the net earnings and profits of the partnership of Ollendorff Watch Company for the period August 1, 1943, to March 20, 1944, was determined to be $35,009.85, including salary of $10,000 earned by him, and his share of the same partnership's charitable contributions covering the same period was determined to be $577.14. Cash withdrawals, including monthly salary payments totaling $10,000 made by Walter Ollendorff from Ollendorff Watch Company during the period August 1, 1943, to March 20, 1944, amounted to $42,400. His share of the net earnings and profits of Ollen Distributors for the period January 1 to May 20, 1944, was determined to be $3,554.25 and his share of the same partnership's charitable contributions covering the same period was determined to be $66.67. On the Federal income tax return filed for Walter Ollendorff covering the period January 1 to March 20, 1944, the *215 reported taxable income included $35,009.85 from Ollendorff Watch Company and $3,554.25 from Ollen Distributors, and the claimed deductions included charitable contributions of $577.14 from Ollendorff Watch Company and $66.67 from Ollen Distributors. The fiduciary income tax return for the Estate of Walter Ollendorff, deceased, reported income from partnerships on the basis of a one-eighth interest in the Ollendorff Watch Company partnership and a one-third interest in the Ollen Distributors partnership and, further, the income earned by each partnership from the beginning of its taxable year to March 20, 1944, was excluded from the income of the estate for the taxable period March 21 to December 31, 1944. In his deficiency notice the respondent made a redetermination of the net income of the Ollendorff partnership and the distributive shares thereof and, further, made a determination as follows: "It is held that the death of Walter Ollendorff did not terminate the partnerships, Ollendorff Watch Co. and Ollen Distributors, and that there is includible in your income for the taxable year March 21, 1944 to December 31, 1944 your share of the income of such partnerships for a full *216 year." Opinion The first issue is involved in each of these consolidated proceedings. The question presented is the fair market value of the closing merchandise inventories, both on hand and in transit, of the Ollendorff Watch Co., Inc., on July 30, 1943, when received as liquidating distributions to the stockholders and contributed to the partnership trading under the name of Ollendorff Watch Company. With respect to each of the petitioners herein the respondent determined that the corporate merchandise inventory cost basis of $634,420.61 constituted the fair market value thereof and that such amount represented the basis in the hands of the stockholders and to the partnership, in lieu of the amount of $1,004,868 which the partnership included in the cost of goods sold for the fiscal year ended July 31, 1944. The parties are in agreement that the fair market value of the inventory on July 30, 1943, constitutes the basis for that asset in the hands of the stockholders and the partnership. Respondent now contends that the fair market value of the inventory on July 30, 1943, was not in excess of $1,004,868, while petitioners contend that it was at least $1,170,000. Based upon *217 consideration of the entire record, we conclude and have found as a fact that the merchandise inventories in question had a fair market value of $1,079,868 on July 30, 1943. In our opinion, the contemporaneous appraised valuation made at or about July 30, 1943 (for the purpose of computing capital gain on the corporate liquidation), represents the fair market value of the corporate inventory items actually embraced in that valuation. We have added thereto an amount which, in our judgment, constitutes the fair market value on July 30, 1943, of the corporate inventory items which were inadvertently omitted from the contemporaneous valuation. Accordingly, we hold that the respondent erred in his determination in regard to each of the petitioners herein and, further, that the Ollendorff partnership opening inventory is the amount of $1,079,868 on August 1, 1943, for the purpose of determining its distributable income for the fiscal year ended July 31, 1944. The second issue is involved in each of these consolidated proceedings. The question presented is whether, for the purpose of determining the partnership distributable income for the fiscal year ended July 31, 1944, the Ollendorff *218 partnership is entitled to a deduction for amortization based on the fair market value, when contributed to it, of the unfilled orders for watches and watch movements, which orders were placed with Swiss manufacturers by the Ollendorff Watch Co., Inc., prior to its liquidation on July 30, 1943, and subsequently filled and shipped to the partnership after it came into existence. The claim for such deduction has been made, for the first time, in each petition filed in these consolidated proceedings. The respondent's answers deny the respective allegations of error that he failed to allow such deduction for the year ended July 31, 1944, but on brief respondent makes no argument with respect to this issue. Petitioners contend that the corporation's total amount of unfilled orders had a fair market value of at least $200,000 on July 30, 1943, when received as liquidating distributions to the stockholders and contributed to the partnership. Petitioners further contend that the unfilled orders constituted a wasting asset to be recovered out of the income produced thereby and that since those orders were substantially filled during the fiscal year ended July 31, 1944, the partnership is *219 entitled to a deduction of $200,000 for that year. The uncontradicted testimony herein establishes that the corporation's unfilled orders or purchase commitments had a market value on July 30, 1943. Based upon a consideration of the entire record and in the exercise of our best judgment, we conclude and have found as a fact that the corporation's unfilled orders for a total of $325,000 of Swiss merchandise had a fair market value of $138,000 on July 30, 1943. See Murray Thompson, 21 T.C. 448, affd. 222 Fed. (2d) 893. Since the unfilled orders or purchase commitments in fact had a fair market value when distributed by the corporation to its stockholders on July 30, 1943, they had a basis when contributed to the partnership, and such basis must be recovered by way of amortization in arriving at the taxable gain attributable to such unfilled orders. The facts herein disclose that of the corporate unfilled orders totaling $325,000 contributed to the partnership, the amount of $285,000 or approximately 81 per cent of such total orders was filled and received by the *220 partnership during its fiscal year ended July 31, 1944. Accordingly, we hold that 81 per cent of the total basis of $138,000 or the amount of $111,780 is deductible for amoritization in computing the distributable income of the Ollendorff partnership for its fiscal year ended July 31, 1944. The third issue is involved in the proceedings of Morton Ollendorff, Herbert Ollendorff, and the Estate of Walter Ollendorff, deceased. The question presented is whether, upon the formation of the partnership trading under the name of Ollendorff Watch Company, and for Federal income tax purposes, Morton, Herbert, and Walter Ollendorff each acquired only a one-eighth interest therein and their respective wives each acquired a one-eighth interest therein, for the purpose of determining the distributive shares of the income of the partnership for the taxable periods involved herein, or, as respondent contends, the interests of the wives are to be disregarded "for federal income tax purposes" and Morton, Herbert, and Walter are to be considered as entitled to one-fourth interests in the distributive income of the partnership. With respect to the petitioners Morton Ollendorff, Herbert Ollendorff, *221 and the Estate of Walter Ollendorff, the respondent determined that each was taxable on approximately a one-fourth distributive share of the income of the Ollendorff partnership and thereby inferentially disregarded the partnership interest of the respective wives of Morton, Herbert, and Walter as provided in the partnership agreement. In his answers the respondent denied "that a valid partnership existed between all seven individuals" (i.e., Morton, Herbert, Walter, their wives, and Carrie). At the trial herein and on brief, respondent makes clear the contention that under the so-called family partnership doctrine the wives of the male partners were not partners for Federal income tax purposes, because the record establishes only that they contributed gift capital and fails to show that capital was a material income-producing factor or that the wives performed any services, exercised any control of the business, or had the intent to join in the conduct of the business enterprise. Upon the consideration of all the facts of record, we agree with the petitioners' contention that Morton, Herbert, and Walter Ollendorff, their respective wives, and Carrie Ollendorff each had a present *222 intent and did join together in the agreement of July 31, 1943, in forming a valid copartnership for business purposes with the profits and losses to be shared and borne in the proportion of one-fourth by Carrie and one-eighth by each of the others. Their respective interests in the partnership were in proportion to the assets contributed thereto by each. The three wives had previously received gifts of stock in the Ollendorff Watch Co., Inc., but upon receipt of their aliquot parts of that corporation's assets in liquidating distributions, they voluntarily contributed these to the partnership and subjected them to the risk of doing business as importers-wholesalers of Swiss watch and clock merchandise. The capital contributed and particularly the inventories and the unfilled orders or purchase commitments for Swiss merchandise were essential to the continued operation of the business and a material income-producing factor. The partnership at all times operated pursuant to the written partnership agreement under which each of the seven partners had a voice in management and the authority to sign promissory notes and checks in the firm name. Each of the seven partners made substantial *223 withdrawals for his own personal use and benefit and each received an aliquot part of the partnership assets upon its dissolution on April 30, 1945. After due consideration of the test laid down in Commissioner v. Culbertson, 337 U.S. 733 (cited by both parties), as applied to the facts herein, we conclude and so hold that the respondent erred in his determination and, further, that upon formation of the Ollendorff partnership Morton, Herbert, and Walter Ollendorff each acquired only a one-eighth interest for the purpose of determining the distributive shares of the income of the partnership for the taxable periods involved herein. The fourth issue herein is involved only in the proceeding of the Estate of Walter Ollendorff, deceased, for the taxable period March 21 to December 31, 1944. At date of death on March 20, 1944, Walter Ollendorff was a partner in two partnerships, Ollendorff Watch Company which reported its income on the basis of a fiscal year ending July 31, and the Ollen Distributors which reported its income on a calendar year basis. Prior to his death, Walter Ollendorff had reported his income on the calendar year basis. Subsequent to the death of *224 Walter Ollendorff each partnership business was continued and the decedent's estate participated as a partner pursuant to the provisions of each partnership agreement. The question presented is whether the death of Walter Ollendorff terminated both partnerships, insofar as the deceased partner is concerned, so that the decedent's share of the earnings of each partnership from the beginning of its taxable year to date of decedent's death on March 20, 1944, was properly includible in the decedent's final return and excludable from the gross income of the decedent's estate for its taxable period March 21 to December 31, 1944, as contended by the petitioner. The respondent determined and herein contends that, pursuant to the partnership agreements, the partnerships were not terminated by the death of Walter Ollendorff and that there is includible in the gross income of the decedent's estate for its taxable period March 21 to December 31, 1944, the estate's share of the income for the full tax year of each partnership, that is, for the Ollendorff Watch Company partnership's 12-month fiscal year ended July 31, 1944, and for the Ollen Distributors partnership's calendar year 1944. *225 The pertinent provisions of the Internal Revenue Code of 1939 [4] are set forth in the margin. Both parties cite and discuss the prior cases on the question at issue, which cases are not uniform in their rulings. The respondent contends that this Court should adhere to its decision in Estate of Joseph E. Tyree, 20 T.C. 675, affd. (C.A. 10, 1954), 215 Fed. (2d) 78. The petitioner contends that, since the instant case involves New York partnerships, this Court should follow the rule in Commissioner v. Waldman's Estate, (C.A. 2, 1952), 196 Fed. (2d) 83, reversing 15 T.C. 596, and hold that a technical dissolution of each partnership occurred by reason of the decedent's death. *226 In Estate of Joseph E. Tyree, supra, this Court said: "The question at issue has been before the courts on numerous occasions and the rulings are not uniform. In Estate of Hunt Henderson, 4 T.C. 1001, this Court held, in effect, that '* * * partnership losses of decedent for the period of January 1 to June 21, 1939 [the latter being the date of death], were "properly includible in respect of the taxable period in which falls the date of his death."' This holding was reversed by the Court of Appeals for the Fifth Circuit at 155 Fed. (2d) 310. We bowed to the higher court and in Estate of Samuel Mnookin, 12 T.C. 744 (reviewed by the Court), followed the view so expressed by the circuit court. Our decision was affirmed by the Court of Appeals for the Eighth Circuit at 184 Fed. (2d) 89. In Girard Trust Co. v. United States, 182 Fed. (2d) 921, the Court of Appeals for the Third Circuit reversed a decision by the district court and joined the Fifth Circuit and Eighth Circuit in their holding on the question. Relying for support on the above cases, the Tax Court, in Estate of Isidore Waldman, 15 T.C. 596 *227 (reviewed by the Court), followed the same path. On appeal, the Court of Appeals for the Second Circuit, in a decision by a divided court (Judge Augustus Hand, dissenting), 196 Fed. (2d) 83, reversed. "In this posture of the ruling cases we adhere to the position taken by us in the Mnookin and Waldman cases and hold that, under the facts here present, the tax year of the partnership, of which decedent was a member, did not end at his death and that no part of the partnership income for the period March 1, 1946 to August 21, 1946 (the date of death), should be included in decedent's final return for the period January 1, 1946, to August 21, 1946. "The case of Guaranty Trust Co. v. Commissioner, 303 U.S. 493, cited by respondent and chiefly relied on by the Second Circuit in the Waldman reversal, is fully distinguished in the opinion of the Third Circuit in Girard Trust Co. v. United States, supra." In the opinion of the Third Circuit in Girard Trust Co. v. United States, 182 Fed. (2d) 921, it was noted that in the case of Guaranty Trust Co. v. Commissioner, 303 U.S. 493, the partnership accounting and distribution *228 of partnership profits actually occurred upon the death of a partner. In the Waldman's Estate case, supra, there was an analogous situation in that the partnership agreement provided only for an election by the decedent's representative to continue as a partner in the business, no effective election was made, the decedent's interest was sold to the surviving partners at an agreed price, and the partnership was dissolved. The Guaranty Trust Co. and Waldman's Estate cases, supra, are distinguished on the facts from the case at bar in that here the decedent's interest in the two partnerships continued at the risk of the businesses and with a share in the profits throughout the tax year of each partnership. The instant case is also distinguished on the facts from Estate of Frank H. Knipp, 25 T.C. 153, affd. 244 Fed. (2d) 436, wherein it was held that the partnership agreement settled all matters between the partners and terminated the tax year of the partnership at the time of the death of a partner. On the facts here present and on authority of Estate of Joseph E. Tyree, supra, we hold that *229 the tax year of each of the two partnerships, of which the decedent was a partner, did not terminate at his death and that no part of the income of each partnership from the beginning of its tax year to March 20, 1944 (the date of death), is includible in the decedent's final return for the period January 1 to March 20, 1944. We further hold that (there was includible in the gross income of the decedent's estate for its taxable period March 21 to December 31, 1944, the estate's share of the income for the full 12-month tax year of each partnership ending within the estate's taxable period for 1944.) One partner died 3/20/44. He was also a partner in another partnership operating on a calendar basis. The tax year of neither partnership was terminated at death, and no part of the income of either partnership from the beginning of its tax year to 3/20/44 is includible in decedent's return for the period 1/1 to 3/20 1944. On this issue the respondent's determination is sustained, except for the adjustments required pursuant to redetermination on the other issues involved herein. On brief, the alternative contention is made that in the event the Court decides the fourth issue adversely *230 to petitioners, then the amount of salary paid by the Ollendorff Watch Company partnership to the decedent prior to his death on March 20, 1944, should reduce the amount of the distributive share of the partnership income for its fiscal year ended July 31, 1944, and includible in the estate's income tax return for the period March 21 to December 31, 1944. This constitutes an issue not raised by the pleadings and hence not properly before the Court. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Herbert Ollendorff, Docket No. 56745; Carrie Ollendorff, Docket No. 56746; and Estate of Walter Ollendorff, Deceased, Herbert Ollendorff, Administrator, Docket No. 56747.↩
2. In the case of Carrie Ollendorff, Docket No. 56746, no petition was filed with respect to the respondent's asserted income tax deficiency of $718.15 for the year 1945.↩
3. This issue is presented in the following manner: In the statements attached to the notice of deficiency there are laconic statements to the effect that "[examination] of the books and records of the partnerships, Ollendorff Watch Company * * * discloses that your share of the distributable income is" a certain amount rather than a lesser amount reported. In each petition it is alleged that upon the dissolution of Ollendorff Watch Company, Inc., all of its stockholders (Herbert, Walter, Morton, Carrie, Leah, Helen, and Charlotte Ollendorff) formed a partnership trading under the name of Ollendorff Watch company. In the answers filed herein respondent "[admits] that upon the dissolution of Ollendorff Watch Company, Inc., its stockholders went through the formalities of creating a partnership which had as its members the petitioner and the six named individuals, but denies that a valid partnership existed between all seven individuals." In his opening statement at the trial of these cases (and later upon brief) counsel for respondent finally disclosed respondent's position on this issue, which is that under the doctrine of Commissioner v. Tower, 327 U.S. 280, and Commissioner v. Culbertson, 337 U.S. 733↩, the wives of Herbert, Morton, and Walter Ollendorff were not partners "for federal income tax purposes."
4. SEC. 181. PARTNERSHIP NOT TAXABLE. Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. SEC. 182. TAX OF PARTNERS. In computing the net income of each partner, he shall include, whether or not distribution is made to him - * * *
(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b). SEC. 188. DIFFERENT TAXABLE YEARS OF PARTNER AND PARTNERSHIP. If the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner. SEC. 126. INCOME IN RESPECT OF DECEDENTS. (a) Inclusion in Gross Income - (1) General Rule. - The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of: (A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent; (B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or (C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.↩